THE CITY OF OTTAWA V. CHARLES C. GREEN.
No. 14,296.    (83 Pac. 616.)

SYLLABUS BY THE COURT.

1. PRACTICE, DISTRICT COURT—*Personal Injury—Opinion Testimony of a Physician.* In an action against a city for damages occasioned by an alleged fall upon a defective sidewalk, where plaintiff testified to the manner in which he fell and that the fall caused a rupture in the region of the groin, it was not error to refuse to permit a physician, who had not examined plaintiff's injuries but who was present and heard part of plaintiff's testimony, to give his opinion concerning the probability of a person's being ruptured in the manner testified to by plaintiff.

2. —————— *Instructions—Defective Sidewalk—Contributory Negligence.* In such a case, where the plaintiff was familiar with the defective condition of the walk but nevertheless attempted to use it in the dark, a certain instruction given was proper. (See p. 218.)

3. PRACTICE, SUPREME COURT—*Failure to Pay Jury Fees Not an Error at the Trial.* The failure of the successful party in a jury trial to pay jury fees in compliance with section 3056 of the General Statutes of 1901 does not affect the substantial rights of the defeated party, nor is it an error occurring at the trial which is raised by a motion for a new trial.

Error from Franklin district court; CHARLES A. SMART, judge. Opinion filed November 11, 1905. Affirmed.

*George D. Rathbun,* for plaintiff in error.
*Gamble & Costigan,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: Charles C. Green recovered a judgment of $400 against the city of Ottawa for injuries that he claimed to have received from a fall upon a defective walk. The city complains.

The petition described the location of the defective walk at the intersection of Second street, running east and west, and Mulberry street, running north and

Ottawa v. Green.

south, and the walk as a plank cross-walk. The defect averred was that "the planks . . . were curved upward, so that they and the dirt which was beneath them formed an abrupt elevation and obstacle directly in the way of the eastern approach to said cross-walk, the top of which was about ten inches above the level of said approach; and that said curvature of the planks also formed a steep incline on said cross-walk;" that plaintiff, exercising due care, etc., while attempting to use the walk was made to stumble and fall, causing, among other injuries, a rupture in the region of the groin, on the right side. The evidence showed that the walk was, and had been for more than three years, in a dangerous condition; that several other persons had fallen in the same manner, and at the same place, as the plaintiff. In each instance the superintendent of streets of the city was notified of these accidents, and of the condition of the walk, and was requested to repair the defect, but no attention was paid to the requests; so that the city had both actual and constructive notice of the defect.

Plaintiff lived a short distance from the defective walk, and had used it frequently and knew of its condition. His duties as janitor required him to leave home at an early hour, and on the morning of September 22, 1903, he left home about four o'clock. He testified that it was a dark morning and not light enough for him to see the obstruction; that he was aware of it and was going along carefully on that account; that he felt along the wire fence to discover when he passed the corner; and that, while endeavoring to avoid the obstacle, and doing all in his power to that end, he reached the place before he knew it and stumbled and fell, and was injured as set out in the petition. The physician who treated him the same day testified to the existence of the hernia or rupture; that he (the witness) was a member of the board of pension examiners; that some months prior to that he had made an examination of plaintiff, who was an ap-

plicant for a pension, and that plaintiff had no rupture at that time.

The answer, in addition to a general denial, set up the defense of contributory negligence. No reply was filed, but it may be assumed that the parties and the court treated the issues as joined by a reply, since no objection by defendant is raised in the record.

Several errors are alleged, many of them so unsubstantial that it seems unnecessary to do more than state them. The court properly denied defendant's motion to require plaintiff to make the petition more definite and certain by stating the *way* in which he was hurt. The petition set forth in plain and concise language how it occurred, without needlessly reciting every detail.

Error is also insisted upon because the court sustained certain objections to testimony. Defendant called one Doctor Davis as an expert witness, and he was asked the following questions:

"Ques. Did you hear the testimony of the plaintiff, Green, in this case? Ans. I heard part of it; I came in after he commenced giving his testimony.

"Q. Did you hear him describe the manner in which he fell or stumbled on the crossing? A. Yes, sir.

"Q. Now, I will ask you to state to the jury, from your knowledge and experience as a physician, the probability of a man rupturing himself in the manner testified to by Green?"

"Q. I will ask you to state to the jury what is the usual and ordinary manner in which rupture occurs?"

Objections to the last two questions were sustained, and error is claimed, upon the authority of *A. T. & S. F. Rld. Co. v. Brassfield*, 51 Kan. 167, 32 Pac. 814. That case was like this in many respects. The injury there was a rupture claimed to have been caused by a sudden strain occasioned by the dropping or turning of a heavy railroad-tie, one end of which plaintiff was lifting. A physician who had examined plaintiff was permitted to testify, over defendant's objections, that such injuries may be produced without great violence

or shock, but that he had never seen a rupture of that character except as the result of more or less violence. After stating that he was present and heard plaintiff testify how the injury was inflicted, he was further asked to state whether in his opinion Brassfield's condition could have been produced or brought about in the manner which he (Brassfield) had detailed to the jury. He answered that it must have been done by violence. The court said:

"It would have been more regular to have put the facts to him in a hypothetical form, and obtained his opinion upon them, instead of asking him for his opinion upon the facts testified to by Brassfield. The testimony of the latter on this question, however, was not obscure or involved, and, being very brief, the company can have suffered no prejudice from this irregularity." (Page 173.)

In the present case Doctor Davis had not heard all the testimony of plaintiff, and never had examined his injuries. But, aside from these differences, the case cited is no authority upon which plaintiff in error may rely. It does not go to the extent of holding that it would have been error to refuse to permit such a question, but merely that in that case, considering the answer and the circumstances, the party against whom it was offered suffered no prejudice, though the question itself was irregular. The trial court properly sustained the objection.

Defendant complains because the court would not permit it to show by Doctor Davis that a man sixty years of age, with the right knee stiff from a gunshot wound, would be more liable to rupture than a person not so affected. In justice to the doctor himself it should be stated that there is nothing in the record from which it could be inferred that he would have so testified had the objection not been sustained.

There is no variance between the notice of the claim filed with the city, where it stated a claim for injuries "caused by a fall on the walk near the northeast corner

of Second and Mulberry streets," and the petition, where it was referred to as a "cross-walk." "Walk" and "cross-walk" mean the same thing. Both are sidewalks, and the city is bound to keep both in repair. The notice challenged the attention of the city to a particular place at the intersection of the two streets. From the photographs in evidence it appears that the city could have had no difficulty in locating the place of accident with such a notice.

The photographs were taken eight days after plaintiff's fall, and error is complained of in admitting them without proof that they showed the condition of the walk on the date of the accident. The fact that several witnesses, including some offered by the city, afterward identified the photographs as showing the exact condition of the walk as it had existed for several years prior and up to the time of the accident, rendered this irregularity of no consequence.

The following instruction given by the court is complained of as not stating fully the duty of a person familiar with the alleged defective sidewalk:

"It was not negligence for him to pass over a cross-walk known to him to be dangerous, but in doing so he must use care and caution reasonably commensurate with the known danger. . . . Consider carefully his knowledge of the condition of the walk, the nature of the defect, whether easily visible or apparent, or not, the nature and manner of the accident, and then determine, in the light of all the circumstances, whether the plaintiff on his part exercised the care and caution that a person of reasonable prudence would have exercised in the light of such knowledge."

It is urged that there should have been included the elements of time, light, locality, mud, manner of traveling, and the crippled condition of plaintiff. To "determine, in the light of all the circumstances," means to consider these elements and everything else in evidence. The instructions, considered together, cover the law of the case, and leave no room for any claim of prejudice on the part of defendant. (*City of Emporia*

*v. Schmidling,* 33 Kan. 485, 6 Pac. 893; *Langan v. City of Atchison,* 35 Kan. 318, 11 Pac. 38, 57 Am. Rep. 165.)

It is contended, also, that the case should be reversed because the jury fees provided by section 3056 of the General Statutes of 1901 were not paid by the successful party before judgment was rendered on the verdict. A statement appears in the record to the effect that these fees were not paid as provided by law. The failure to pay these fees was an irregularity, but not one that affected the substantial rights of plaintiff in error, or of which it can complain. (*City of Topeka v. Tuttle,* 5 Kan. 311, 425.) The provision of the law is for the benefit of the county, and the party against whom the judgment is entered is not affected in any way by a failure to comply. Moreover, this court can consider only errors to which the attention of the trial court was challenged by the motion for a new trial, and this irregularity is not thus raised.

The court committed no error in denying the motion for a new trial. The grounds relied upon were insufficient, and no diligence was shown nor sufficient reasons given why the evidence was not produced at the trial.

Counsel insist that because Green was a cripple and took no lantern with him when he ventured upon the defective walk in the darkness, and because he could have gone on some other street, either he "was guilty of contributory negligence or else he has fabricated the whole thing." It is sufficient to say that all these matters were passed upon by the jury, and that there appears no lack of evidence in the record to sustain the verdict. The judgment is affirmed.

All the Justices concurring.