No. 31,148.

Mattie Speakman, *Appellee,* v. The City of Dodge City, *Appellant.*

(22 P. 2d 485.)

Opinion filed June 10, 1933.

*Arthur C. Scates,* city attorney, for the appellant; *Albert Watkins,* of Dodge City, of counsel.

*Lane Dutton,* of Dodge City, and *J. N. Tincher,* of Hutchinson, for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was an action for damages for personal injuries sustained in falling on an icy sidewalk.

On December 14, 1930, there was a snowfall of 4.6 inches at Dodge City. On December 17, 1930, plaintiff was passing along Cedar street and in crossing the alley between First and Second avenues she fell and sustained injuries alleged to have been caused by reason of snow and ice having been permitted to remain and become roughened, ridged and uneven.

It was stipulated at the trial that Dodge City is a city of the second class and that notices as required by R. S. 12-105 and R. S. 14-441 were given.

A. A. Justice, United States weather observer at Dodge City, whose testimony is undisputed, testified that on Sunday, December

14, there was a 4.6-inch snowfall; that early that morning the temperature was 34° and dropped continuously during the day, the lowest being 27°; that on the 15th there was a .2-inch snowfall, and the highest temperature was 27° and the lowest 22°; that on the 16th there was a trace of snow, and the highest temperature was 26° and the lowest 22°, and that on the 17th there was .1-inch snowfall and the temperature was below freezing all day, and that from midnight of Saturday, the 13th, to midnight of Wednesday, the 17th, there was a total sunshine of 2.1 hours, and that sunshine would have a tendency to melt snow even though the temperature remained below freezing.

The plaintiff testified that the sidewalk on Cedar street had been cleared of snow, but the alley (where she fell) was all snow "they had drove through it and walked through it, and all full of holes, it was in a very bad condition there to cross. It was rough—it was uneven—there were great big ridges—no place provided to walk across the alley. The snow was in ridges five or six inches high." On cross-examination she stated that "the ridges were just ruts that cars had made . . . and there were footprints and car tracks, there was no path, it wasn't snow, it was just frozen, didn't sink down in it, walked on top of it, the whole alley was cut up." The only other witnesses for plaintiff were the superintendent of streets who testified the alley was slick and frozen but he didn't notice any ruts, just prints of a car, not more than two inches, and a woman who passed just before the accident and who stated cars had passed through and people had walked across when it was soft and it had frozen. The jury returned answers to special questions as follows:

"1. State whether or not the ice and snow was rough and uneven at the alley crossing on Cedar street, between First avenue and Second avenue. A. Yes.

"2. Was it snow or ice? A. Both.

"3. How high were the ridges of ice? A. From two to four inches.

"4. Were there any sharp ridges? A. Yes.

"5. What obstruction in the alley did the plaintiff fall over? A. Ridges of snow and ice.

"6. Describe the obstruction. A. Ridges of snow and ice, caused by automobile and pedestrian traffic.

"7. Was it such as to be plainly visible at two o'clock in the afternoon? A. Yes.

"8. Could it have been avoided by stepping over it or going around it? A. Not conveniently.

"9. Was it caused by automobiles going along the alley? A. Yes, in part.

"10. Was it caused by pedestrians crossing the alley at that point? A. Yes, in part.

"11. Did the same condition as to ice and snow prevail over Dodge City generally on December 17, 1930? A. No.

"12. What, if anything, was unusual about the alley crossing involved in this case? A. The presence of ridges of snow and ice on the day of accident."

The defendant moved to set aside the answers to questions 3, 4, 11 and 12 as contrary to law and the evidence, also for judgment notwithstanding the verdict, which motions were denied, as was a motion for a new trial.

The defendant appeals and assigns error on the court's refusing to give requested instructions, on the giving of certain instructions and on the denial of its motions.

In so far as the motion to set aside answers to the special questions is concerned, there was evidence, which the jury evidently believed, to warrant the answers to questions Nos. 3, 4 and 12, but we are unable to find anything in the abstract which warrants the answer to question No. 11. It is true there is evidence that some sidewalks had been cleaned and that snow had been removed from the alley where the accident occurred, but there is no evidence as to snow and ice conditions at any other crosswalk or crossing.

In *Evans v. Concordia,* 74 Kan. 70, 85 Pac. 813, it was held that where plaintiff knew when he went on a sidewalk covered with ice and snow that the ice was smooth and slippery, and he fell by reason thereof, and no other defect was claimed, he could not recover for his injuries. The distinction made in many cases where snow and ice has been allowed to form in ridges or uneven places is noted, as well as the effort to have the court adopt the rule that in a mild climate the city is held to a greater degree of diligence in removing ice and snow than would obtain in a more rigorous climate. The concluding paragraph of the opinion reads:

"The court referred to the well-established doctrine that a city is not liable for injuries caused by smooth and slippery ice where it has formed generally upon the streets and walks, and where no special defect is shown, and mentioned two well-founded reasons for it: First, it is not one of the law's reasonable requirements that a city should remove from the many miles of walks the natural accumulation of ice and snow, because such a requirement is impracticable from the nature of things; second, because when these conditions exist generally they are obvious, and every one who uses the sidewalks at such times is on his guard and is warned by the surroundings and the danger of slipping at every step. These reasons meet with our approval. To hold otherwise would cast upon cities a burden for which they are not responsible and greater than

their ability to provide for. This rule has reference to a general accumulation of ice or snow from natural causes, where no other defect in the walk is shown except the natural slippery condition of the ice or snow." (p. 73.)

No other Kansas case has been cited in the briefs, nor does our own research disclose any, where the question of liability of a municipality for injuries caused by falling on snow and ice, except where coupled with defects in the street or sidewalk, has been before the court except *Gorges v. State Highway Comm.*, which has been here twice (135 Kan. 371, 10 P. 2d 834, and 137 Kan. 340, 20 P. 2d 486). In the first appeal the petition alleged the highway was defective in that ice was permitted to accumulate on it for a distance of about 100 feet near a culvert or bridge where there were concrete posts, and that plaintiff's automobile skidded against the posts, causing the injury. A demurrer was overruled in the trial court, and on appeal it was held the petition did not state a cause of action. The petition was then amended to show in substance that there was a low place in the highway; that discolored ice had accumulated thereon in which deep icy ruts were cut by travel over it resulting in the highway being rough and uneven. A demurrer to the amended petition was overruled and the second appeal came as a result. The liability of the state highway commission and a city are not measured by the same rule, but the following language from the second opinion is instructive:

"Here the cause of the injury was not in any fault of the structure itself, but was caused by the action of the elements over which the commission had no control. The danger was caused by a fall of rain and snow on city streets and county highways alike, and by a process of freezing and thawing was transformed into ice, and the traffic over it caused roughness and ruts.

"Did the legislature when it enacted the statute intend to create a liability against the state for persons injured because of ice accumulated on the highway? It had already been determined that a city was not liable for damages to one injured from an icy and slippery condition of sidewalks and streets where the condition was an accumulation of ice thereon which arose from natural causes, upon the theory that the burden on the city would be so great and so impracticable, if not impossible, for the city to remove snow and ice on miles and miles of sidewalks and streets, it could not have been within the intention of the lawmakers. (*Evans v. Concordia*, 74 Kan. 70, 85 Pac. 813.) There it was said that the city was not required to remove snow and ice from the streets, and that, 'to hold otherwise would cast upon cities a burden for which they are not responsible and greater than their ability to provide for.'" (p. 341.)

The rule that a municipality is bound to use ordinary and reasonable care to remove defects arising out of conditions occurring after

snow has fallen or ice has formed has been held not to apply where the roughness or unevenness is produced by travel through snow and slush which afterward freezes, but the exception does not apply where the roughness presents no obstructive features which are not common to general snow and ice. 43 C. J. 1023. In *Albritton v. Kansas City*, 192 Mo. App. 574, 188 S. W. 239, it was said:

"A city is not liable for injuries resulting from a general condition of snow and ice ordinarily resulting from not removing fallen snow from the sidewalk, as the law deems that such requirement would be impracticable or too burdensome." (188 S. W. 239, ¶ 2.)

"Snow allowed to remain on public sidewalks invariably, when subjected to alternate processes of thawing and freezing, becomes more or less rough, uneven and slippery and, of course, more or less dangerous. That, we have pointed out, is a natural and general condition for which the city cannot be held responsible." (p. 241.)

"Unevenness and roughness produced by travel through snow and slush, which afterwards freezes and presents no obstructive or dangerous features which are not common to general snow and ice, are not to be classed as actionable defects." (p. 240, ¶ 8.)

In a Connecticut case (*Carl v. New Haven*, 93 Conn. 622, 107 Atl. 502) it was said that the municipality, as regards fallen snow and formed ice, was under no obligation to make the streets and walks absolutely safe and much less to make them safe under all circumstances, and—

"What the law requires of them, and all that it requires, is the exercise of such efforts and the employment of such measures—directed to the end that their streets and walks be maintained in a reasonably safe condition, all the circumstances of the situation considered—as, in view of the circumstances and conditions, are in themselves reasonable. The circumstances to be taken into account and the considerations to be weighed in determining what is reasonable to be done, and what is a reasonable condition to be sought after and attained, if reasonably attainable, are many. Their variety is vastly greater and their relation to the decision far more interrelated and complex than in the case of structural defects. They involve as prominent elements in the decision the location, extent, and character of the use made of the street or walk, the practicability and efficiency of possible remedial measures, the size of the problem which the municipality is called upon to face in the existing emergency, the expenditure involved in dealing with that problem in the several possible ways, the physical resources that the municipality has at command which it can utilize to deal with it. . . . The accepted general rule looks constantly to the ever changing circumstances of situation, and its keynote throughout is reasonableness in view of the circumstances as they appear upon each occasion." (pp. 625, 626.)

Notes on the general question of the city's liability may be found

in 13 A. L. R. 20, 21 L. R. A. 263, 58 L. R. A. 321 and 20 L. R. A., n. s., 656. And the rule with respect to ridges and accumulations of ice and snow is stated in 13 R. C. L. 411.

It will be observed that the injuries here complained of happened on a crossing over an alley. It was held in *Ottawa v. Green,* 72 Kan. 214, 217, 83 Pac. 616, that while in a notice of claim the word "walk" was used, and in the petition the word "crosswalk" was used, there was no variance, and that they mean the same thing. But in the decisions respecting liability a distinction is frequently drawn. In White on Negligence of Municipal Corporations, section 508, is the following:

"It is the conclusion of the New York courts that the duty of a municipality to keep its sidewalks free from snow and ice does not, in the absence of some express provision of statute, apply to the same extent to a crosswalk or crossing on a public street. The reason is grounded on the impracticability of performing this duty so as to accomplish its purpose. It is apparent that the work of cleaning the crosswalk would be rendered quickly ineffective by vehicles crossing the walk. Besides, in case of very deep snow, the act of cleaning would be to impede travel in the roadway proper. This rule has prompted a decision that the evidence of negligence in cases of injuries from snow and ice on a crosswalk must be extraordinarily strong to sustain a recovery for injuries thus received."

In McQuillin on Municipal Corporations, 2d ed., section 2979, it is said that a crosswalk is separate and distinct from a sidewalk, and in section 2983 that the duty of a municipality in regard to snow and ice on sidewalks does not apply to the same extent to crosswalks. And see, also, 13 R. C. L. 409, and *Dupont v. Village of Port Arthur,* 204 N. Y. 351, 97 N. E. 735, 39 L. R. A., n. s., 1167.

An element entering into the question of the city's liability is that of time and notice. The general rule as to liability of the city for defects in its streets was stated in *Jansen v. City of Atchison,* 16 Kan. 358, syl. ¶ 4, as follows:

"To make a city liable for injuries resulting from a defect in a sidewalk, it must appear, either that the city had notice of the defect, or that it was a patent defect and had continued so long that notice might reasonably be inferred, or that the defect was one which with reasonable and proper care should have been ascertained and remedied."

The general rule with respect to snow and ice is that municipal corporations are not held liable for injuries to persons occasioned by accumulations of snow and ice which at the time of the accident have been so recent that in the exercise of that reasonable and

continuing inspection which the law requires it would not have discovered it in time to remedy it by the exercise of reasonable care. The city has a reasonable time for the removal of the snow after it has ceased to fall and may even wait for a change of temperature where the conditions are such as to render the work of removal impracticable. (See White on Negligence of Municipal Corporations, section 512. And see, also, *Beirness v. City of Missouri Valley,* 162 Ia. 720, 144 N. W. 628, 51 L. R. A., n. s., 218.) The second and third paragraphs of the headnote in the last citation read:

"Where, in an action against a municipality for injuries from a fall on an icy sidewalk on Wednesday morning, it is shown that, on the preceding Sunday and Monday, there had been a fall of snow, and that between Sunday and Tuesday evening there had been a slight thaw, and on Tuesday night an additional snowfall of about one-half inch, there is nothing to warrant a jury in the conclusion that a small spot of ice covered with snow on the walk had existed for such time as would charge the city with notice of it.

"When cold follows a melting of snow, causing a film of ice upon the sidewalks which it is practically impossible to remove, the municipality may, without being guilty of negligence, wait for a change of temperature to remedy the condition." (51 L. R. A., n. s., 218, ¶¶ 2, 3.)

From the above citations of decisions and authorities it may be deduced that a city is not liable for injuries resulting solely from falls on smooth ice and snow, but that it is liable where ice and snow have been allowed to accumulate and remain and become ridged, rutted and uneven, due regard always being given to whether the city has sufficient notice and opportunity to remedy the situation by removal or other effective remedy. And in connection therewith consideration should also be given to weather conditions and to the well-recognized sudden changes in meteorological conditions which frequently occur in Kansas. The burden of proof is upon the claimant to show all the various elements entering into his right to recover.

In this case the evidence shows that on December 14 there was a 4.6-inch snowfall with slight falls of snow thereafter, a freezing temperature practically all of the time and little or no sun from December 14 to the time of the accident. There is evidence that the superintendent of streets passed the site of the accident frequently, and that at the time of its happening the snow had become packed and icy and rough and uneven, but there is no showing of any kind how long prior to the accident this condition obtained or

that after it became in that condition the city had either notice of the condition or opportunity to remove it. The weather conditions were such from the time of the first fall of snow until the time of the accident that there could not have been any great amount of thawing and freezing, and while in a frozen condition, considering the comparatively short interval of time and the number of similar crossings in the city, it cannot be expected that the city could clean all of them and it should not be held that it was its legal duty to do so. In the very nature of things the city could not clean all of the crosswalks from one street to another and over all alley crossings with weather conditions as they concededly were, and the fact that it had cleaned some of them is not proof of notice as to others or of negligence in not removing snow and ice from them. And it may be remarked that very often in Kansas the condition is sooner remedied by change of weather than it could be by any effort of the city. And this court takes notice of the fact that not only in Dodge City, but in every other city in Kansas, with the weather conditions such as they were in this case, it would be impossible, by any reasonable expenditure of money, to clean all of the crosswalks and street crossings of snow and ice which may have become roughened because of passing traffic. The city is not an insurer or guarantor of the safety of its streets, crosswalks and sidewalks and is required only to use reasonable diligence that they be safe. The facts as developed on the trial and as found by the jury in answer to the special questions fail to show that the defect complained of had existed for any period of time prior to the accident, or that the city had any notice thereof or that after notice it had had a reasonable time to remedy any conditions for which, for any reason, it might be liable.

Defendant's motion to strike the answer to special question 11 and for judgment notwithstanding the general verdict should have been sustained.

The judgment of the lower court is reversed and the cause is remanded with instructions to render judgment for the defendant.