No. 32,724

Susie C. Fields, *Appellant*, v. The City of Leavenworth, *Appellee.*

(58 P. 2d 1065)

Opinion filed July 3, 1936.

*Benjamin F. Endres* and *Keefe O'Keefe,* both of Leavenworth, for the appellant.

*Malcolm McNaughton,* of Leavenworth, for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was an action against the city of Leavenworth to recover damages for personal injuries sustained by plaintiff as a result of stepping and falling upon some ice located on the sidewalk in front of an occupied business building. Defendant's demurrer to plaintiff's evidence was sustained. The exclusion of a certain exhibit and the sustaining of the demurrer form the basis of the appeal.

The building in front of which the accident occurred was a two-story structure and was owned by Walter Yoakum. The tenant was the Southwest Bell Telephone Company. Neither owner nor tenant was made a party defendant. Certain of the tenant's employees were called by plaintiff and testified in the case. The accident occurred at about one-forty-five or two o'clock in the afternoon, on

January 18, 1930, as plaintiff was entering the building. The "blotch, or skim or mat of ice," as described by some of the witnesses, was the result of drippings from icicles or snow or both, which had formed and collected on the cornice of the building. Its size was variously described. The description ranged from six or eight inches in width to three and one half feet in width. The description as to thickness ranged from one fourth inch to three or four inches. Some witnesses described the place as tapering from the center to the edge. Plaintiff's husband described it as "humped up, roughed up." There was ice and snow everywhere in the city. It had snowed on the 16th and 17th of January. Some of the walks had been cleared of snow. There had been a bad blizzard and it was extremely cold. The night before the accident the temperature had dropped to 16 or 18 degrees below zero. The evidence disclosed there existed a short thawing period during the day when the sun's rays struck the icicles. Plaintiff's husband testified that it appeared to him the sidewalk in front of this building had been cleared of snow at one time; that the walk was principally clean across the door, but that there was plenty of ice around there, and that it looked as if salt had been scattered on the walk in front of the door. The janitor described the ice in question as a little patch east of the doorway and about a foot out from the building. Plaintiff testified that the walk in front of this building had been cleared of ice and snow; she noticed no sleet on the walk; the only thing she remembered was this ice place on it; she went into this building every month; on this occasion she entered from the east; the drippings were freezing as they hit the sidewalk; she saw the ice; she stepped on it, but would not have done so had she thought she was going to fall; she wore Walkover shoes and galoshes.

The witness Ringo testified: "I am manager of the telephone company; there was a little patch of ice east of the doorway, about a foot from the building; it came from the drippings off the cornice of the building; prior to this occasion I noticed the drippings down on the sidewalk at times and ice would form from it as a result; I do not recall how long I had been noticing it; there was salt on the sidewalk at any time any snow or ice or freezing condition existed."

The witness Scott testified he saw some man out there knocking off icicles, but would not say whether it was on the day of the accident or the day afterwards; he saw the ice and stepped over it; "I guess anybody could see the ice there as a matter of fact."

As to having observed the dripping of water on the walk prior to this occasion, the plaintiff testified: "I have passed the same place before . . . and I noticed along there if it was warm enough for snow to melt, it would drop down onto the sidewalk, if it was cold enough it will freeze—naturally it freezes and it mounds up."

John Burdette, the janitor at this building, was called to testify, and stated: "I kept the sidewalks clean; that was my job; I kept them clear of ice and snow; I do not think we had any necessity to put salt on the sidewalk *that morning;* . . . I readily admit that when it snow'ed the snow would lodge on that coping at the top, but I do not remember whether the snow lodged right over the door; when it got warm enough to melt it dripped down to the sidewalk, *but it was readily removed, it didn't stay there long at a time."* (Italics inserted.)

The janitor was not at the building when the accident occurred. He further testified:

"When I got there the sidewalk did not have any ice or snow on it. I think Mr. Walter Yoakum (owner of the building) came later in the evening; he just came and looked around there where the matter happened, then he looked up at the coping. I am just trying to think if I did notice icicles up there before this happened, or not. I don't remember that I noticed icicles before this happened."

Thereupon counsel for plaintiff announced he was surprised at the witness's testimony and asked permission to ask impeachment questions. The court permitted a limited interrogation. The main purpose of the impeachment questions seemed to be to show the witness had signed a statement to the effect that icicles had formed on the coping in front of this building prior to this event, resulting in dripping and freezing on the sidewalk, and that the witness had further stated the owner of the building had knocked icicles off that building a few' days before the accident occurred. Plaintiff then offered in evidence exhibit C, to which defendant objected. The objection was sustained on the ground the statement was immaterial. The statement was as follows:

"My name is John Burdette and I live at 431 Fourth ave. I am janitor for the S. W. Bell Tel. Co. and have been in the employ of the company for fifteen years. I did not see Susie Henderson the day she fell on the sidewalk in front of the commercial department of the Telephone Co. at 516 Delaware street—I was at dinner about that time. When I got back after dinner they told me she fell and I telephoned her and asked her how she felt, and she told me she was pretty bad, and, of course, I told her I was sorry. As far as I

know she slipped on some ice that had formed from drippings from the coping near the top of the building—icicles had formed up there 7, 8 inches and a foot long and they would drip down and form ice mounds on the walk—it was thicker where it dripped on the walk than at other places and make the walk rough and bumpy; it was cleared off by putting ice-cream salt—stone salt—that would melt it right away. Mr. Loeb phoned me if I knew Susie fell and hurt herself on some ice there by the door and, of course—and I told him I did not know it. Mr. Yoakum came there then and knocked the big icicles from that coping and there was no trouble after that. That sidewalk slopes a little and when those icicles get on there it makes it bad."

The ruling of the court was proper. The statement itself shows that the witness had not said the owner of the building knocked icicles off on previous occasions. The portion of the statement, "icicles had formed up there . . . and would drip down and form ice mounds on the walk," was immaterial for the reason the witness had previously testified that the ice deposit was readily removed. The exhibit itself disclosed the same care in the prompt removal of any ice which formed from the drippings, "it was cleared off by putting ice-cream salt—stone salt—that would melt it right away." Prior to the offer of exhibit C the witness had testified: "When it got warm enough to melt, it dripped down to the sidewalk *but it was readily* removed, it didn't stay there long at a time." (Italics inserted.)

After the exclusion of exhibit C this same witness further testified.

"Q. Now, the next question is how long had that water dropped down in cold weather and formed those icicles, or from snow melting above, to your best recollection? A. It probably would happen today and we would see it and clean it off. It would not be any longer than we discovered it.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. When it did light on the coping it would melt and drop down on the sidewalk and form those ice mounds? A. That is the first time we ever had that trouble in that building.

"Q. That is according to your best recollection? A. My best recollection and I think all the rest of their recollections, because I had the job of keeping it off."

While the exclusion of exhibit C was proper under the circumstances, the demurrer to plaintiff's evidence would have been properly sustained had the exhibit been admitted. Here was a highly unusual and extreme weather condition. There was snow and ice everywhere in the city. There had been a blizzard. The temperature the night before had dropped to 16 or 18 degrees below zero. Plaintiff's own evidence disclosed the sidewalk in front of this

building had been cleared of snow; she observed no sleet on the sidewalk. The evidence clearly disclosed prompt care had been exercised by the tenant in removing the ice resulting from the drippings.

This action was against the city. Certainly the city will not be held to a greater degree of care and diligence than the tenant exercised under the circumstances in this case. The law never contemplated that a city should be held accountable in damages under circumstances such as here presented. The ice was removed much more promptly by the tenant than the city possibly could have removed it from every sidewalk in the city of Leavenworth under the conditions which then obtained. Moreover, the evidence charged the city with no notice of even the temporary condition which prevailed in front of this building. In a carefully written and well-considered opinion, this court in *Speakman v. Dodge City*, 137 Kan. 823, 22 P. 2d 485, held:

"A city is not liable for injuries resulting solely from falls on smooth ice and snow, but is liable where ice and snow have been allowed to accumulate and remain and become ridged, rutted and uneven, *due regard being given to whether the city has sufficient notice and opportunity to remedy the situation by removal or other effective remedy, and in connection therewith consideration should also be given to weather conditions and to the well-recognized sudden changes in meteorological conditions which frequently occur in this state.*" (Italics inserted.)

"Where plaintiff seeks to recover from the city for injuries alleged to have been sustained by a fall on snow and ice, the burden of proof is upon him to show all of the various elements entering into his right to recover." (Syl. ¶¶ 1, 2.)

It must also be remembered no other defect in the sidewalk than the temporary existence of this icy mat is claimed or shown. In the early case of *Evans v. Concordia*, 74 Kan. 70, 85 Pac. 813, it was held:

"First, it is not one of the law's reasonable requirements that a city should remove from the many miles of walks the natural accumulation of ice and snow, because such a requirement is impracticable from the nature of things; second, because when these conditions exist generally they are obvious, and everyone who uses the sidewalks at such times is on his guard and is warned by the surroundings and the danger of slipping at every step. These reasons meet with our approval. To hold otherwise would cast upon cities a burden for which they are not responsible and greater than their ability to provide for. This rule has reference to a general accumulation of ice or snow from natural causes, where no other defect in the walk is shown except the natural slippery condition of the ice or snow." (p. 74.)

· Furthermore, plaintiff saw this icy place as she was about to enter the building. It is common knowledge that ice is slippery. Seeing it, she nevertheless deliberately stepped upon it. In *Ade v. City of Wichita,* 141 Kan. 497, 41 P. 2d 734, it was held:

"The rule is that the use of an apparently defective walk does not charge the user with negligence, provided the user exercises care such as an ordinarily prudent person would exercise under similar circumstances, but where the undisputed evidence shows that the plaintiff, with full knowledge of the situation and the claimed dangerous condition, not only did not affirmatively act with ordinary care, but proceeded in utter disregard of possible consequences, she cannot recover, and a demurrer to such evidence should be sustained." (Syl. ¶ 2.)

In support of appellant's contention the demurrer should have been overruled, we are referred to *Evans v. Concordia,* supra; *Smith v. City of Leavenworth,* 15 Kan. 81; *Corlett v. City of Leavenworth,* 27 Kan. 673; *City of Emporia v. Schmidling,* 33 Kan. 485, 6 Pac. 893; *Langan v. City of Atchison,* 35 Kan. 318, 11 Pac. 38; *Kirkham v. City of Kansas City,* 89 Kan. 651, 132 Pac. 160; *City of Emporia v. Humphrey,* 132 Kan. 682, 297 Pac. 712. These decisions have received our careful consideration. A reading of them will readily disclose they cannot possibly be construed as authority for holding the city liable under the admissions contained in plaintiff's evidence in this case.

The judgment is affirmed.