(822 P.2d 1049)

No. 66,455

GUY AGNEW, *Appellant*, v. DILLONS, INC., *Appellee.*

Opinion filed December 13, 1991.

*Bradley A. Pistotnik*, of Pistotnik Law Offices, Chartered, of Merriam, for appellant.

*Leonard R. Frischer* and *Barry E. Warren*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellee.

Before LEWIS, P.J., LARSON and RULON, JJ.

RULON, J.: Guy Agnew, the plaintiff in a personal injury action, appeals from the district court's grant of a directed verdict in favor of the defendant Dillons, Inc., claiming the court erred in: (1) holding that Dillons did not breach the duty of care owed by a business proprietor to an invitee; and (2) refusing to admit evidence that Dillons failed to provide a handrail. We affirm in part, reverse in part, and remand for further proceedings.

The essential facts are as follows:

On the morning of February 1, 1988, plaintiff stopped at a Dillons grocery store in Olathe around 7:45 a.m., spending ap-

proximately 15 minutes inside the store purchasing some items. An ice storm was in progress that morning. The entrance to Dillons was approached by walking up a ramp. On this particular morning, a red carpet mat was placed on the ramp. While leaving the store and walking down this ramp, plaintiff slipped and fell, incurring several injuries.

Among other allegations, plaintiff alleged in his petition that Dillons was negligent in not removing ice and snow from the mat and entrance to the store. At trial, Captain Steven Blackwell of the Olathe Fire Department testified he was among the emergency personnel dispatched to Dillons the morning of plaintiff's fall. The team was dispatched at 7:55 a.m., but response time was delayed because of icy streets. Blackwell testified there was an ice storm that morning and the streets were icy, although he did not recall the specific condition of the pavement at Dillons. While Blackwell could not remember at trial whether ice was falling at the time of his arrival at Dillons, he testified in a deposition about six months after the incident that ice was falling when he arrived at the store and continued to fall while he was at that location.

Robert Maib, manager of the Dillons store, testified that he arrived at the store around 7:30 a.m. on February 1, 1988, and that a sleet-type precipitation was falling and freezing as it accumulated. Maib further testified that when he arrived at the store, someone had already placed a mat on the ramp because of the ice. (A mat is not usually kept on the ramp.) The mat was a thick cloth carpet, about three-fourths of an inch high, and actually intended for indoor use.

Plaintiff testified precipitation was falling as he drove to the Dillons store and as he entered the store, but he had no trouble walking up the entrance ramp. He further testified that probably no precipitation was falling when he left the store. Plaintiff additionally testified that as he left the store, he began sliding on the ramp, reached for a handrail, and fell. After falling, he testified he ran his hand across the mat and felt an accumulation of ice. According to plaintiff, precipitation was falling when he was taken to the hospital by ambulance.

Plaintiff made a proffer, in chambers, that he grabbed for a handrail as he fell and would have perhaps avoided the fall if a handrail had been in place.

After the close of plaintiff's evidence, Dillons moved for a directed verdict, essentially claiming plaintiff failed to meet his burden of proof because a business proprietor has no duty to remove or clean an area of snow while precipitation is falling and for a reasonable time thereafter. The district court granted Dillons' motion.

Additional facts, as needed, will be included in our discussion of the issues.

## THE DUTY

Plaintiff's argument that a business proprietor breaches the duty owed to invitees by not removing snow or ice during an ongoing winter storm is contrary not only to Kansas law, but to the law in a majority of jurisdictions.

Clearly, a proprietor must use ordinary care to keep those portions of the premises which can be expected to be used by business invitees in a reasonably safe condition. *Knowles v. Klase*, 204 Kan. 156, 157, 460 P.2d 444 (1969). However, a proprietor or operator of a trade or business is not an absolute insurer of the safety of customers. *Steinmeyer v. McPherson*, 171 Kan. 275, 278, 232 P.2d 236 (1951).

When confronted with the precise issue of whether a business proprietor breaches this duty of ordinary care by not removing accumulated ice, snow, or other precipitation from outside areas during a storm, other jurisdictions have held the duty is not breached. *Walker v. The Memorial Hospital*, 187 Va. 5, 45 S.E.2d 898 (1948), is a case often cited in support of this rule. In *Walker*, the plaintiff arrived at the hospital at 4:30 p.m. to visit her husband, a patient. The steps outside the hospital entrance were not ice covered, but snow had been swept to the sides of the steps and the platform leading to the door. 187 Va. at 9. Snow had fallen that morning and between the hours of 2 p.m. and 5 p.m. The steps were wet although not frozen at 6 p.m. About 6 p.m., freezing rain fell, and the steps became slippery about 7 p.m. Around 8:30 p.m., a light freezing rain fell. 187 Va. at 10-11. The plaintiff did not know snow had fallen during the

afternoon. She left the hospital at 9 p.m. and, as she started down the steps, she placed her hand on the handrail. There appeared to be no ice on the steps, but as the plaintiff stepped down on the second step, she slipped and fell. The area had not been treated with an ice-melting substance nor had any warning signs been posted. No precipitation was falling at the time of the plaintiff's slip and fall. 187 Va. at 9.

The *Walker* court noted "there was a fairly continuous condition of freezing rain or sleet from before seven o'clock until eleven-thirty p.m., and that the conditions on the city sidewalks, and on the platform and steps of the hospital, were slippery, and that this was known to the hospital authorities." 187 Va. at 11. The court then concluded that a business establishment, absent unusual circumstances, may await the end of a storm and a reasonable time thereafter to remove ice and snow from outdoor entrance walks, platforms, or steps because it is impractical to take action earlier. 187 Va. at 13.

The court further reasoned that "[e]very pedestrian who ventures out at such time knows [he or she] is risking the chance of a fall and of a possible serious injury." 187 Va. at 22. A requirement that a business proprietor continually expend effort during a winter storm to remove precipitation from outdoor surfaces would essentially be a requirement to insure the safety of invitees and is a burden which is beyond that of ordinary care. Furthermore, "since the storm had not finally terminated, the exercise of reasonable care no more required defendant to warn of the result of the weather than it did to remedy the result." 187 Va. at 24. Ultimately, the *Walker* court affirmed the action of the trial court in setting aside the jury's verdict for the plaintiff. 187 Va. at 24.

The Minnesota Supreme Court, citing *Walker* as well as cases from Iowa, Pennsylvania, and New York, adopted the same rule in *Mattson v. St. Luke's Hospital*, 252 Minn. 230, 233, 89 N.W.2d 743 (1958). The *Mattson* court held: "The fact that the possessor [of property] may have attempted to take corrective measures during the storm's progress does not change the situation even though such measures were temporarily effective." 252 Minn. at 233.

Although no published Kansas cases discussing the precise issue before us were found, our Supreme Court has held that a municipality has no duty to clear streets and sidewalks of ice that has accumulated and become rough and rutted, absent sufficient notice and opportunity to remedy the situation. *Speakman v. Dodge City*, 137 Kan. 823, 829, 22 P.2d 485 (1933). In *Speakman*, more than four inches of snow had fallen on December 14. On December 17, the plaintiff was crossing an alley between two city streets when she slipped and fell. She alleged the City negligently allowed the snow and ice to remain and become ridged and uneven.

In reaching its holding, the *Speakman* court stated as follows:

"The general rule with respect to snow and ice is that municipal corporations are not held liable for injuries to persons occasioned by accumulations of snow and ice which at the time of the accident have been so recent that in the exercise of that reasonable and continuing inspection which the law requires it would not have discovered it in time to remedy it by the exercise of reasonable care. The city has a reasonable time for the removal of the snow after it has ceased to fall and may even wait for a change of temperature where the conditions are such as to render the work of removal impracticable. [Citations omitted.]" 137 Kan. at 828-29.

Additionally, the *Speakman* court discussed the unreasonable and heavy burden in requiring municipalities to remove naturally accumulating snow and ice from their miles of sidewalks and streets. 137 Kan. at 825, 826. The court further stated: " '[W]hen these conditions exist generally they are obvious, and everyone who uses the sidewalks at such times is on his [or her] guard and is warned by the surroundings and the danger of slipping at every step.' " 137 Kan. at 825 (quoting *Evans v. Concordia*, 74 Kan. 70, 73, 85 Pac. 813 [1906]). Ultimately, the court reversed the district court's denial of a motion for a judgment notwithstanding the verdict and ordered judgment for the City. 137 Kan. at 830.

While plaintiff cites various cases arguing support for the rule that a business proprietor does breach the duty of ordinary care by not removing precipitation accumulating on outside surfaces during a storm, the facts of these cases are distinguishable from the present case. In six of the cases, the plaintiffs slipped and fell due to water or slush puddles located on interior floors of the defendant businesses. Customers entering the businesses dur-

ing bad weather had brought in water or slush, and the plaintiffs alleged the businesses failed to clean the floors or warn of the puddles. The respective courts, on the facts presented, either held that a jury question existed on whether the duty of ordinary care was breached or that a verdict for the plaintiff was supported by the evidence. *Mooney v. United States*, 619 F. Supp. 1525, 1526-27, 1528 (D.N.H. 1985); *Scott v. Alpha Beta Co.*, 104 Cal. App. 3d 305, 307, 308, 163 Cal. Rptr. 544 (1980); *Carder v. K-Mart, Inc.*, 185 Ga. App. 143, 144-45, 363 S.E.2d 593 (1987); *Wal-Mart Discount City v. Meyers*, 738 S.W.2d 841, 842, 845 (Ky. App. 1987); *Peralta v. Schwegmann Bros. Gt. Supermkts*, 406 So. 2d 720, 721, 722 (La. App. 1981); *Felder v. K-Mart Corp.*, 297 S.C. 446, 447, 450, 377 S.E.2d 332 (1986).

Plaintiff cites two cases that involve accumulation of precipitation on outside surfaces. *City of Baldwyn v. Rowan*, 232 So. 2d 157 (Miss. 1970), is distinguishable on the facts. There the City allowed water to continuously drain from an alley across a sidewalk at the corner of City Hall, and then down a short ramp to the street. On the morning of the plaintiff's fall, this portion of the sidewalk and the ramp was covered with a thin layer of ice. There was no ice anywhere else on the streets and sidewalks. The plaintiff slipped and fell on the ramp. 232 So. 2d at 158. In determining whether the trial court erred by refusing to direct a verdict for the City, the Mississippi Supreme Court stated the hazard causing plaintiff's fall was not totally created by natural causes. The City had allowed the water to drain across the sidewalk and down the ramp for years, despite the drainage problem being easily remedied. The court affirmed the jury's finding that the City failed in its duty of reasonable care and the trial court's denial of the motion for directed verdict. 232 So. 2d at 160. Here, the condition of the mat placed on the ramp outside the Dillons store was caused solely by the ice storm.

Next, plaintiff cites *Capener v. Duin*, 173 N.W.2d 80 (Iowa 1969), where a plaintiff postal carrier slipped and fell on the ice-covered porch steps of a residence. On appeal the verdict was affirmed for the postal carrier. 173 N.W.2d at 87. While the opinion notes there were intermittent periods of snow and sunshine the week the fall occurred, with icy conditions generally prevailing, the opinion gives no indication that it was storming

at the time of the fall. 173 N.W.2d at 82. Furthermore, the case does not consider the specific issue of a business proprietor's duty of ordinary care to remove accumulations of ice or snow from exterior surfaces during a storm. When Iowa was confronted with that issue, the court adopted the rule enunciated in. *Walker*. In *Reuter v. Iowa Trust & Savings Bank*, 244 Iowa 939, 57 N.W.2d 225 (1953), a guest of a tenant in an office building slipped and fell on steps as he was leaving the building. The day was snowy, intermingled with periods of rain, sleet, wind, and subfreezing temperatures. 244 Iowa at 941. The *Reuter* court adopted the *Walker* rule, holding that the plaintiff-guest was an invitee to whom the landlord owed a duty of ordinary care to keep the office building in a reasonably safe condition. 244 Iowa at 940.

The reasoning of the cited cases holding that a business proprietor, absent unusual circumstances, does not breach the duty of ordinary care by not removing snow or ice from outdoor surfaces during a storm and a reasonable time thereafter is sensible and persuasive. A business would have to continuously devote time and effort to keep outdoor surfaces precipitation-free during a storm. We believe such an effort to be quixotic. Additionally, invitees using or traversing outdoor areas should be aware of the weather and its probable effect on those surfaces. As the Virginia Supreme Court stated in *Walker*, "[E]very pedestrian who ventures out at such time knows he [or she] is risking the chance of a fall and of a possible injury." 187 Va. at 22. We are convinced a business proprietor does not breach the duty of ordinary care owed to invitees to keep premises in a reasonably safe condition by not removing accumulated precipitation from exterior surfaces during a winter storm and a reasonable time thereafter, absent unusual circumstances.

## THE DIRECTED VERDICT

Our standard of review is well settled.

" 'The standard of appellate review of a motion for directed verdict requires this court to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought and when the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury. [Citation omitted.]' " *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 15 Kan. App. 2d 153, 157, 804 P.2d 1012 (1991).

## (a) DUTY TO REMOVE

Plaintiff argues that under our standard of review, reasonable minds could differ on whether precipitation was falling when he slipped and fell because conflicting evidence was presented to the jury. Therefore, the jury should have been allowed to determine whether Dillons had a duty to remove the accumulated ice from the ramp.

Based upon the record before us, we believe reasonable minds could only conclude plaintiff's fall occurred during the winter storm. Even if the freezing precipitation had stopped when plaintiff fell, such cessation was brief in duration because clearly precipitation was falling when plaintiff entered the store and when emergency personnel arrived.

We are satisfied reasonable minds could not conclude either that the storm had ended or even that a reasonable time had passed after the cessation of the storm to activate Dillons' duty to remove the accumulated ice from the ramp.

## (b) DUTY TO PREVENT ACCUMULATION

As we understand, plaintiff claims Dillons was negligent in both placing the mat on the ramp and in not applying an ice-melting substance to the mat.

We believe plaintiff's contentions are merely repetitious of earlier assertions. Under the facts here, Dillons had no duty to remove ice from outside areas during the winter storm, and thus no duty to keep the mat free of ice during the storm. We have difficulty understanding how the ramp was more dangerous with the mat than without it. The record here indicates that at the moment of plaintiff's fall, city streets, Dillons' parking lot, and sidewalks approaching the store were icy and slick. Under the existing weather conditions, we believe it is more likely than not that the outside ramp leading into the store would have been icy and slick if not covered by the mat.

We conclude the district court did not err in directing a verdict on these points.

## LACK OF HANDRAIL

During trial, plaintiff made a proffer of evidence to the court concerning the absence of a handrail on the entrance ramp at the time of his fall and Dillons' subsequent installation of a hand-

rail on the ramp. The court ruled the evidence inadmissible. Plaintiff contends that his proffer of evidence concerning the lack of a handrail was not to show that a subsequent remedial measure had been effected.

Clearly the district court was correct in holding that Dillons' subsequent installation of a handrail was not admissible to establish fault. However, we believe the court erred in not permitting plaintiff to introduce evidence that a handrail was not present when he slipped and fell.

In addressing this issue, we have reviewed the cases cited by Dillons and conclude they are of no avail here. Instead, we believe the facts and holdings of *Noland v. Sears, Roebuck & Co.*, 207 Kan. 72, 483 P.2d 1029 (1971), are more persuasive.

In *Noland*, the plaintiff lost her balance and fell as she was going down some steps. She alleged *inter alia* that the defendant's failure to provide handrails was negligence. At the conclusion of plaintiff's evidence, the district court sustained defendant's motion for dismissal. 207 Kan. at 73.

On appeal, our Supreme Court noted the following:

"Turning to the evidence, Mrs. Noland testified it was her usual practice when she walked down steps where there was a handrail, to walk right beside it or at least to put her hand on top of it; that when she lost her balance on the Sears' steps, there was nothing she could do to regain her balance or steady her balance without falling; that she lost her balance and had nothing to hang onto; there was no way for her to regain her balance." 207 Kan. at 75.

The *Noland* court, in remanding the case, concluded "the evidence in its entirety, even though it may not have been robust, would have been sufficient under the surrounding circumstances to justify the jury in drawing an inference of causation, had the case been submitted to it." 207 Kan. at 76.

Plaintiff's proffer of evidence here is strikingly similar to the testimony found in *Noland*. As in *Noland*, plaintiff's proffer may not have been robust, but we believe it was sufficient under the facts to justify the jury in drawing an inference of causation, had the district court submitted the issue to the jury.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.