NOT DESIGNATED FOR PUBLICATION

No. 123,526

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CYNTHIA DEGAND,
*Appellant*,

v.

STORMONT-VAIL HEALTHCARE, INC.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; TERESA L. WATSON, judge. Opinion filed March 4, 2022. Affirmed.

*LJ Leatherman*, of Palmer Law Group, LLP, of Topeka, for appellant.

*Susan L. Mauch*, of Goodell, Stratton, Edmonds & Palmer, LLP, of Topeka, for appellee.

Before POWELL, P.J., SCHROEDER, J., and JAMES L. BURGESS, S.J.

PER CURIAM: Cynthia Degand, a Stormont-Vail Healthcare, Inc. employee, sued Stormont-Vail after she fell on an icy sidewalk while walking in to work. The district court granted summary judgment to Stormont-Vail based on the winter storm doctrine. On appeal, Degand argues that the district court erred when it found as a matter of law that unusual circumstances did not exist in this case. Even when the facts are viewed in the light most favorable to Degand, the evidence and caselaw support the district court's decision. We affirm.

1

Degand slipped and fell while walking into work on February 20, 2018, at Stormont-Vail in Topeka. Degand had worked as an employee at Stormont-Vail for over 44 years.

Degand thought about not coming into work on the day of her fall. During her 44 years of working for Stormont-Vail, she had called into work on rare occasions and said that she could not come because of weather. On the morning of her fall, Degand called into work to ask if the hospital was busy. The hospital told her that they only had one empty bed, meaning that they were busy. She was not specifically directed to come into work. Degand "went ahead and got ready" because she felt that she was needed at work.

Degand lives about nine miles from Mayetta and drives 40 minutes to work. On the morning of February 20, Degand had to walk on the slick sidewalk from her home to her truck when she was leaving for work. She also had to clean ice off of her truck before leaving. Degand's truck went sideways on the road at least three times while driving to Topeka. She described the weather during her commute as "sleeting" and noted that she had to turn the defroster "on high."

Degand described the weather as "like sleeting" and "[f]reezing rain" when she parked her truck in a parking lot owned by Stormont-Vail at 10th and Washburn. Degand then exited her truck and began to walk from the parking lot to the building. She described the sidewalk as "very slick," "[d]angerous," and a "sheet of ice."

Scott Miller was the grounds supervisor that morning and was responsible for maintenance of Stormont-Vail's outside property. Miller supervised a crew of other Stormont-Vail employees including Joe Friess, Rick Pattison, and William Billings.

Miller knew that there was a "generic" shift change for hospital employees that usually occurred around 7 a.m.

On the morning of Degand's fall, Friess and Pattison clocked into work shortly after 4 a.m. According to Friess, it was raining—sometimes heavily. This rain later turned into sleet. Friess and Pattison were tasked with monitoring the east side of the main hospital entrance where Degand's fall occurred. They were to apply ice melt if needed. Pattison and Friess found no slippage or ice near 10th and Washburn before 7 a.m. They received no complaints about sidewalks or parking lots that day and later treated the sidewalks and parking lots after the storm had passed.

Degand slipped and fell on the sidewalk in the parking lot at approximately 6:45 a.m. As she was walking, Degand claimed that it was "probably sleeting still just a little bit." Degand remembers that "it was still doing some sleeting" when she was being transported to the emergency room for her injuries resulting from the fall.

Degand sued Stormont-Vail for negligence in October 2018. After discovery, Stormont-Vail moved for summary judgment in February 2020. The relevant part of Stormont-Vail's motion argued that Stormont-Vail did not breach its duty of reasonable care to Degand because the Kansas winter storm doctrine was applicable. Degand responded and argued in part that the winter storm doctrine was not applicable because there were four separate "moisture events" on the morning of Degand's fall—not one ongoing storm. Degand further argued that the unusual circumstances exception to the Kansas winter storm doctrine prevented application of the doctrine.

In October 2020, the district court granted summary judgment in Stormont-Vail's favor. The court first held that a winter storm was in progress at the time of Degand's fall. The court rejected Degand's argument that unusual circumstances existed, which would preclude application of the winter storm doctrine. The court held that the winter storm

doctrine applied as a matter of law, and as a result Stormont-Vail did not breach its duty of ordinary care to keep its premises in a reasonably safe condition.

Degand filed a timely notice of appeal.

ANALYSIS

*Did the district court err in granting summary judgment to Stormont-Vail?*

Degand argues on appeal that the district court erred in granting summary judgment to Stormont-Vail. She does not challenge the district court's factual finding that a winter storm was in progress at the time of her fall. She only argues that the district court erred in ruling as a matter of law that unusual circumstances did not exist in her case.

The summary judgment standard of review is well established.

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling [is] sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

Degand argues that the district court did not view the facts in the light most favorable to her as the nonmoving party, nor did it give her the benefit of any inference

4

that may be drawn from the facts. She also argues that there was a genuine issue of material fact as to the question of whether unusual circumstances existed as an exception to the winter storm doctrine.

This court first recognized the winter storm doctrine in *Agnew v. Dillons, Inc.*, 16 Kan. App. 2d 298, 304, 822 P.2d 1049 (1991), where it held "that a business proprietor, absent unusual circumstances, does not breach the duty of ordinary care by not removing snow or ice from outdoor surfaces during a storm and a reasonable time thereafter." In that case, Guy Agnew went to a Dillons grocery store while an ice storm was in progress. As Agnew left the store, he slipped and fell on an icy ramp leading to the Dillons entrance. Though there was some question as to whether precipitation was still falling at the time of Agnew's fall, the court was "satisfied reasonable minds could not conclude either that the storm had ended or even that a reasonable time had passed after the cessation of the storm to activate Dillons' duty to remove the accumulated ice from the ramp." 16 Kan. App. 2d at 305. In explaining the purpose of the winter storm doctrine, the *Agnew* court stated:

> "A business would have to continuously devote time and effort to keep outdoor surfaces precipitation-free during a storm. We believe such an effort to be quixotic. Additionally, invitees using or traversing outdoor areas should be aware of the weather and its probable effect on those surfaces. As the Virginia Supreme Court stated in *Walker*, '[E]very pedestrian who ventures out at such time knows he [or she] is risking the chance of a fall and of a possible injury.' [*Walker v. Memorial Hospital*, 187 Va. 5, 22, 45 S.E.2d 898 (1948)]. We are convinced a business proprietor does not breach the duty of ordinary care owed to invitees to keep premises in a reasonably safe condition by not removing accumulated precipitation from exterior surfaces during a winter storm and a reasonable time thereafter, absent unusual circumstances." *Agnew*, 16 Kan. App. 2d at 304.

*Agnew* did not explain what "unusual circumstances" would warrant action during a winter storm. However, this court, as well as courts in other states applying a similar doctrine, have discussed the parameters of that concept.

One of these cases is *Moore v. First Baptist Church of Independence, Kansas, Inc.*, No. 70,809, 1994 WL 17120808 (Kan. App. 1994) (unpublished opinion). There, Alta Moore slipped and fell at First Baptist Church. First Baptist asked its parishioners to stop by the church on one of two days to review photos for the church directory. On the day that Moore chose, there was freezing rain and the entrances and exits to the church were icy. Moore debated going to the church, but ultimately decided to do so. Ice and snow fell while her husband drove her to First Baptist.

First Baptist employees had worked continuously to clear paths of ice and snow during the day. Moore did not see the cleared path and walked across an uncleared area to get to the cleared entryway. When she left the church, she saw the cleared path but did not know if it would lead to her car. She ended up returning the way she came. When she got to the uncleared area near her car, she slipped and fell.

The district court denied First Baptist's motion for directed verdict, and this court reversed. 1994 WL 17120808, at *4. Specifically, this court held that the facts of the case did not arise to unusual circumstances, reasoning:

> "Throughout the day, First Baptist continually cleaned a walkway from the immediate parking spaces to the entrance. Under *Agnew*, a business that continuously devoted time and effort to keep surfaces free of precipitation would be acting beyond ordinary care. Moore testified that she debated whether to go out. She got out of her car and thought about how to proceed in the icy conditions. When she left the church, she chose not to follow the cleared pathway to the parking area. These facts do not rise to 'unusual circumstances.'" *Moore*, 1994 WL 17120808, at *4.

6

This court also considered unusual circumstances in *Childs v. Goodland Economy Lodging, Inc.*, No. 106,583, 2012 WL 2149818 (Kan. App. 2012) (unpublished opinion). In that case, truck driver Noel Childs stopped at a Super 8 motel after I-70 was closed due to a winter storm. Over 17 inches of snow fell in the area during the storm, and there were strong gusts of wind. It was snowing when Childs went to his second-floor room that evening. He woke up around 4 a.m. to check on his truck. He tried to use an interior staircase to get downstairs, but the door to the outside would not open because it was blocked by a snow drift. Childs instead took the exterior staircase. He slipped and fell on the exterior stairs and injured his ankle. There was conflicting evidence as to whether Super 8 employees put up sawhorses to barricade the exterior staircase. Childs sued Super 8, but the district court granted Super 8's motion for summary judgment after finding that the winter storm doctrine applied.

A panel of this court affirmed the district court, with Judge Malone dissenting. 2012 WL 2149818, at *4. The majority reasoned that Childs was well aware that a severe winter storm had occurred. It was reasonable for Childs to expect the exterior staircase to be slippery, thus Super 8 did not have a duty to warn him of the condition.

Judge Malone believed that there was sufficient evidence of unusual circumstances to deny Super 8's motion for summary judgment. He noted that, because the motel did not have an elevator and the interior stairs were blocked, the only way for Childs to leave his room was to use the exterior stairs. "Under these circumstances," Judge Malone reasoned, "it is reasonable to expect Super 8 to undertake special effort to assure that the stairs were clear of snow and ice so that the second-floor guests would have access to and from their rooms." 2012 WL 2149818, at *5. Judge Malone also pointed out several places where he believed relevant evidence was controverted—such as whether Super 8 blocked the exterior stairs and when the snow stopped falling. The dissent concluded that "courts should be cautious against rigidly applying [the winter storm doctrine] except in the most clear-cut situations." 2012 WL 2149818, at *6.

7

Courts in other states also apply a version of the winter storm doctrine, including the unusual circumstances exception. In the *Walker* case, cited by this court in *Agnew*, Irma Walker slipped on stairs while leaving a hospital. It had snowed before she visited the hospital, and the snow had been swept off of the entrance steps. While Walker was in the hospital, freezing rain began falling intermittently. Although it was not raining when Walker left the hospital, it did rain before and after she left. She did not know about the freezing rain or the slippery conditions it created. The Virginia Supreme Court ruled that the winter storm doctrine barred Walker's claim. Important to the court was the fact that "[t]he hazardous condition which resulted in [Walker]'s unfortunate injury was caused solely by the usual and natural action of the elements." 187 Va. at 22. Walker took the same risk as any other pedestrian when she walked out onto the steps. Memorial Hospital did not take any affirmative action nor did it have any defect in its premises that increased the risk of injury to the plaintiff.

The district court rejected Degand's first point that she was a long-time hospital employee who had to report to work despite the weather. The district court found no evidence that Degand "asked to stay home or was ordered to come to work." Instead, "[t]he only evidence is Degand's testimony that, before she came to work, she called in to see if the hospital was busy. She was told there was only one empty bed, so she decided to go to work." The district court's finding is supported by the record. Further, there is no support in the caselaw for the idea that Degand's status as an employee imposes a heightened duty on Stormont-Vail. Stormont-Vail's duty of care was the same for anyone and everyone who walked on the sidewalk in question.

Next, Degand claims that it was an unusual circumstance that the parking lot she used is known by Stormont-Vail to be used by employees. The *Agnew* court found that imposing a duty on business owners to clear all well-travelled areas on their premises

during a winter storm would result in a significant expansion of their legal duties. This argument is further diluted by the fact that Degand's fall did not occur in the parking lot. And again, there is nothing to support the contention that Degand's status as an employee imposes any greater standard of care.

Degand also asserts that unusual circumstances existed because she reported to work at a well-known time for a general shift change. However, this court rejected that idea under similar circumstances in *Moore*. In *Moore*, First Baptist knew that parishioners would be traversing from its parking lot to its church the day of the winter storm because the parishioners had appointments to view photos for the church directory. This court did not impose a heighted duty on First Baptist just because it invited people onto its premises during a winter storm.

Finally, Degand argues that unusual circumstances existed because Stormont-Vail had the time and resources to treat the area where she fell but did not do so. As the district court said in its written order: "The whole point of the winter storm doctrine is to relieve a property owner of a legal obligation to remove accumulated precipitation from exterior surfaces as it falls to the ground during a winter storm." Nothing in the caselaw imposes "a higher duty on those who 'could have' managed to clear accumulation as it fell but did not." Degand's argument on this point is contrary to the purpose of the winter storm doctrine. If Degand would prevail with this argument, it would eviscerate the winter storm doctrine and we decline to take that step.

Degand ventured out in a winter storm. She was well aware of the risks involved. Before even leaving her house she considered not going in to work. When she left her house, she walked down a slick sidewalk and had to clean ice off of her truck before driving to work. On her 40-minute drive to Topeka, her truck went sideways at least three times. When Degand got to Stormont-Vail, it was still sleeting. Degand was aware that there was the potential that the sidewalk was covered in ice. "Every pedestrian who

9

ventures out at such times knows he [or she] is risking the chance of a fall and possible serious injury." *Walker*, 187 Va. at 22.

This case also lacks evidence showing that Stormont-Vail did anything to contribute to the risk posed by the winter storm. The situation with the sidewalks was monitored, and nothing was found to be out of the ordinary considering the continuing storm. Stormont-Vail was not put on notice of any extraordinary facts that might have necessitated a response on its part.

The facts related to Degand's asserted unusual circumstances are not in dispute, which renders the issue appropriate for summary judgment. Even when these facts are viewed in the light most favorable to Degand, they do not amount to unusual circumstances. For these reasons, the district court's judgment is affirmed.

Affirmed.