Dickinson v. Beal.

---

## Frank Dickinson v. Alonzo Beal.

### No. 413.   (62 Pac. 724.)

1. Evidence—*Competency of Witness—Religious Belief.* A witness is not rendered incompetent to testify by reason of his disbelief in the existence of God.
2. ———— *Bill of Rights.* Nor can that fact be shown for the purpose of discrediting his testimony, by reason of the provisions of section 7 of the bill of rights.

Error from Shawnee district court; Z. T. Hazen, judge. Opinion filed October 27, 1900. Reversed.

### STATEMENT.

Plaintiff in error sued defendant in error to recover $210 for pasturing seventy head of steers. The defendant answered denying any liability on account thereof, and alleging by way of counter-claim that the defendant, in the spring of 1898, sold the steers to plaintiff at $4.25 per hundred pounds, amounting to $2840.60; that on the 16th of August, 1898, the plaintiff had paid $2445.89, leaving a balance of $477.55, with interest from August 16, 1898, for which he

asked judgment against the plaintiff. The plaintiff replied to the counter-claim, first, by general denial; second, admitting that there were negotiations for the purchase of the property and an attempted sale, but that the same had failed by reason of the fact that at the time the cattle were delivered they were mortgaged for an amount in excess of their value by the defendant to A. J. Gillespie & Co., of Kansas City, Mo., of which fact the plaintiff had no knowledge at the time of the pretended sale and delivery and until thereafter; that the defendant had made false and fraudulent representations to the plaintiff in regard thereto, and in regard to the value of the cattle; that he pastured the cattle for the defendant until the 16th of August, when, at the defendant's request, they were shipped to the mortgagees, who sold them and applied the proceeds upon the mortgage lien and debt due to Gillespie & Co. from Beal. There was a trial to a jury, and a verdict for the defendant for $1 on account of the counter-claim, and judgment thereon. From this judgment the plaintiff prosecutes this petition in error and makes eighteen assignments of error.

*T. W. Harrison*, for plaintiff in error.

*Isenhart & Alexander*, for defendant in error.

The opinion of the court was delivered by

MAHAN, P. J. : It is first contended that the court erred in refusing to permit the plaintiff to propound to a witness for the defendant and require the witness to answer the question whether he, the witness, believed in the existence of a God. It is said in the argument that the object of this question was to determine the competency of the witness and the weight to be given to his testimony, by showing that

Dickinson v. Beal.

he did not believe in the existence of a God. At common law a person who did not believe in the existence of a God was incompetent to testify. Section 7 of the bill of rights embodied in the state constitution provides as follows : "No religious test or property qualification shall be required for any office of public trust, nor for any vote at any election, nor shall any person be incompetent to testify on account of religious belief." The question propounded to the witness was respecting his religious belief. It was immaterial what he believed or did not believe in this regard. His belief could not be used to impair his testimony.

Another clause of the same section of the bill of rights is : "Nor shall any control of or interference with the rights of conscience be permitted." Our view of the provision, as a whole, is that the people of the state, in the formation of the fundamental laws governing them as a society, intended that all persons should stand upon an equality exactly before the law without regard to what they believed or disbelieved. To permit the question to be asked would assume that a stigma was cast upon a person who disbelieved in the existence of a God in accordance with the doctrines of the Christian church or churches, such as felons suffer by reason of the conviction of a crime.

The second contention is that the court refused to hear counsel for the plaintiff upon the questions of law involved in the case, at the conclusion of the evidence and before the instructions were given to the jury. This presents the question as to whether a party has a right to demand to be heard by counsel upon questions of law involved in a case and to be given to the jury for their direction in determining the facts of a case, or whether that is a mere privi-

lege which the court may withhold at its pleasure. In *Railroad Co. v. Cattle Co.*, 59 Kan. 111, 52 Pac. 71, it is held that it is error to deny counsel the right to be heard in support of his motion for a new trial.   In the course of the opinion it is said :

"The parties to a cause pending in a court have an absolute right to be heard, not only at the trial of the issue of fact, but also on the motions addressed to the court involving the merits of the controversy.   While this exact question has perhaps never been presented to this court, the principle is declared in many cases."

Here follows a citation of several authorities, and the court proceeds :

"No court is ever warranted in assuming that it fully understands the merits of a cause until it has heard the parties to it.   It is always permissible to limit arguments of counsel to such reasonable time as may be necessary for the presentation of the matter under consideration.   If the judge already has a well-defined opinion concerning the matter upon which he is about to pass, he may decline to hear the party in whose favor he intends to decide; but he should never refuse the other party a fair chance to convince him that he is about to commit an error.   Possibly it might be held that the error in refusing to hear an argument on the motion for judgment on the special findings is not sufficient to warrant a reversal of the judgment when this court is satisfied that the question was correctly decided by the trial court."

The plaintiff had prepared five requests for instructions to the jury, based upon his theory of the case and his idea of the law that ought to govern the jury in their conclusion.   It was upon these questions of law involved in these requests that counsel desired to be heard, and upon which the court refused him. The court also refused to give any of the instructions requested, and wholly omitted to refer to the princi-

Dickinson v. Beal.

ples of law in the instructions given to the jury.    The
first request was that, under the laws of the state, the
mortgagee of personal property holds the legal title
thereto and is the owner thereof and is entitled to the
possession, in the absence of stipulations to the con-
trary, and that an attempted sale by the mortgagor of
the whole property without regard to the mortgage
would be void and such attempted sale would not
bind the purchaser.    The second request was to
the effect that the mortgagor of personal property
could sell only his interest in the property sub-
ject to the mortgage lien, and that, if the cattle
were lawfully mortgaged by Beal to Gillespie & Co.
for much more than their value, Beal would have
no interest in the cattle to sell.    The third request
was to the effect that parties have the right to choose
the person with whom they will contract, and if the
cattle were covered by mortgage given by Beal to
Gillespie & Co. amounting to more than the value of
the cattle, and the mortgage was a valid mortgage,
then Gillespie & Co. held the title to the cattle and
were owners thereof, in the absence of any stipulation
to the contrary, and Dickinson would not be bound to
deal with Gillespie & Co. and would not be bound by
the attempted sale of the cattle to him by Beal.    The
fourth request was, in effect, that an attempted sale
of property by one who is not the owner would not
bind the purchaser, and that if Gillespie & Co. held a
valid chattel mortgage upon the cattle at the time of
the attempted sale, then they were the legal owners of
the cattle and entitled to possession, in the absence of
any stipulation to the contrary, and that an attempted
sale by Beal to Dickinson, without reference to the
mortgage, would not bind Dickinson.    The fifth re-
quest was to the effect that a sale, in order to be bind-

ing upon the purchaser, must be a completed sale, and if the sale is of the entire property, without reference to an encumbrance thereon, the sale must be from the owner or holder of the legal title, and if anything remained to be done in order to make it a sale from the owner, then it would not be a completed sale and would not be binding upon the purchaser. Now, in view of the fact that the court in its instructions said nothing to the jury with regard to the title of the property as affected by this mortgage, but did tell the jury as follows:

"9. Parties have a right to make their own contracts; and when two parties have made a contract, it is the duty of the courts and juries to enforce the contract as made, according to its terms, unless the contract is procured by fraud or is against public policy or against some positive statute. The law is that when the minds of the parties have agreed upon the proposition then the contract is made. That is the rule. When a person makes a proposition to sell at a certain price, upon certain terms, and the person to whom the proposition is made accepts the proposition according to its terms, that constitutes a contract, because the minds of the parties have then met, or have agreed upon the same thing.

"10. Now in this case, if the defendant Beal had cattle to sell and he made a proposition to the plaintiff Dickinson as to what he would take for the cattle, fixing the price and the terms of the sale, and Dickinson accepted the proposition as made, and the cattle were weighed out to him and delivered to him, then I instruct you that that constituted a contract between the parties, and they would thereafter be required to live up to that contract on both sides. It is for you to say whether there was any contract of sale made or not. If those cattle were sold by Beal to Dickinson, then the plaintiff could not recover in this action for pasturing the cattle during the time for which he claims, because, if the cattle were the property of the

plaintiff, the defendant could not be required to pay for pasturing them during that time.

"11. Now as to the set-off or counter-claim of Beal against Dickinson, I instruct you that if these parties agreed upon a price which Dickinson was to pay Beal for those cattle, and in pursuance of that agreement the cattle were delivered to Dickinson by Beal, and Dickinson did not pay the full price of the cattle, then Beal would be entitled to recover from Dickinson whatever is still unpaid upon that contract. If, however, there was a mortgage upon that property, and Dickinson did not know anything about the mortgage, that it had been placed there by Beal, and Dickinson was afterward interfered with in the handling of those cattle on account of that mortgage, then, of course, to the extent that he was interfered with, or in whatever way he was damaged by reason of that mortgage, ought to be taken into consideration by the jury in the determination of this case. But if the mortgage was upon the cattle, and it did not interfere with Dickinson in handling or disposing of the cattle, then, and in that case, the mortgage would cut no figure one way or the other."

We think it was prejudicial error to refuse a hearing thereon.

It was not denied in the evidence that there was a contract between Beal and Dickinson for the sale of these cattle at $4.25 per hundred pounds, nor was there any controversy about them being delivered to Dickinson under that agreement. There was a dispute in the evidence as to whether Beal represented them to be free from encumbrance, and as to whether, as a fact, Dickinson knew they were mortgaged to Gillespie & Co. at the time they were sold and delivered. There was also a controversy as to who controlled the cattle thereafter, and by whom they were shipped to Gillespie & Co., and for whose account they were shipped. So it is not correct to state, as

was stated by the court, that it was merely a question whether there was a contract to sell or not, whether the parties had agreed upon a price, and the cattle had been delivered; but the question was, Was the contract a valid, legal and binding one upon Dickinson? It would seem from the verdict of the jury that they believed from the evidence either that there was no contract of sale or that Dickinson had been damaged within the meaning of the instruction of the court by being interfered with in the handling of the cattle; otherwise the defendant was entitled to the full amount of the remainder of the consideration unpaid. If Dickinson bought the cattle knowing that the mortgage was upon them—that is, bought only such right as Beal had to sell therein—taking his chances on being able to meet the mortgage, he would be bound thereby, and, in such case, would have no claim for pasture, in any view of the case; but this is not the allegation of the counter-claim. The allegation is of an absolute sale at $4.25 per hundred pounds, amounting to so much money, with a credit of a partial payment, leaving a balance due, etc. It appears from the evidence that this credit was the amount Gillespie & Co. allowed upon the sale, being the net proceeds of the sale, credited upon Beal's indebtedness to them. The court seems to have overlooked the real issue made by the pleadings. In this view of the case, we cannot say that the refusal of the court to hear counsel upon these questions of law did not result in prejudice to the plaintiff.

The third, fourth, fifth, sixth, seventh and eighth assignments of error are that the court misdirected the jury in its several instructions. Counsel utterly ignores the rule of the court in this regard.

The tenth, eleventh, twelfth, thirteenth and four-

teenth assignments of error are that the court refused to give instructions requested by the plaintiff and heretofore referred to. We are of the opinion that these instructions as framed and presented were correctly refused, had other appropriate instructions been given, or had anything been given by the court properly covering that branch of the case.

The fifteenth assignment of error is that the court overruled the plaintiff's motion for a new trial. We think, in view of what has heretofore been said, that the motion for a new trial ought to have been sustained.

·The judgment is reversed, and the case remanded with directions to award the plaintiff a new trial.