NOT DESIGNATED FOR PUBLICATION

No. 123,873

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DARLENE LACOST,
*Appellant*,

v.

BOOT HILL CASINO & RESORT and STEVE'S WELDING,
*Appellees*.

MEMORANDUM OPINION

Appeal from Ford District Court; LAURA H. LEWIS, judge. Opinion filed November 19, 2021.
Affirmed.

*Peter J. Antosh*, of Garcia & Antosh, LLP, of Dodge City, for appellant.

*Penny A. Calhoun*, of Wallace Saunders, Chartered, for appellee Boot Hill Casino & Resort.

*Michael J. Norton*, of Foulston Siefkin LLP, of Wichita, for appellee Steve's Welding.

Before MALONE, P.J., POWELL and CLINE, JJ.

PER CURIAM:  Darlene Lacost slipped and fell in the parking lot of the Boot Hill Casino & Resort (Boot Hill), injuring herself. Lacost filed a premises liability lawsuit against Boot Hill and Steve's Welding (the Contractor), the private contractor hired to remove snow from the lot. The district court granted summary judgment for Boot Hill and the Contractor based on the winter storm doctrine. Lacost appeals the district court's decision, arguing that the district court erred in granting summary judgment because (1) the district court improperly relied on inadmissible evidence in considering the summary

1

judgment motion, and (2) the district court improperly granted summary judgment by misapplying the winter storm doctrine and improperly determining questions of fact. Based on the record presented here, we find the district court did not err in granting summary judgment for Boot Hill and the Contractor based on the winter storm doctrine.

FACTS

There was a severe snow and ice storm in the Dodge City area starting on January 13, 2017, and ending on January 16, 2017. On January 15, 2017, sometime between 3 a.m. and 5 a.m., Lacost arrived at Boot Hill in Dodge City. She parked her car and walked through the parking lot. Near the entrance, Lacost slipped and fell, injuring her leg and other parts of her body.

On January 14, 2019, Lacost filed a negligence action against Boot Hill and the Contractor. Boot Hill and the Contractor denied the negligence claim and asserted the affirmative defenses of assumption of risk, comparative fault, and the winter storm doctrine. The parties engaged in discovery from May through August 2019.

On September 24, 2019, Boot Hill moved for summary judgment based on the winter storm doctrine. Contractor joined the motion. Boot Hill's motion included a statement of uncontroverted facts in compliance with Kansas Supreme Court Rule 141(a) (2021 Kan. S. Ct. R. 220). Most of the evidence supporting Boot Hill's statement of uncontroverted facts was weather data from the National Weather Service establishing there was a severe snow and ice storm in the Dodge City area starting on January 13, 2017, and ending on January 16, 2017.

Lacost responded to the summary judgment motion, objecting to Boot Hill's facts on legal grounds and arguing the inapplicability of the winter storm doctrine. But Lacost did not controvert most of Boot Hill's fact statements. Lacost asserted additional facts

2

mainly supported by security camera photos of the parking lot at the time of her fall. Boot Hill replied stating that Lacost failed to comply with Supreme Court Rule 141(b) because she did not state whether she controverted Boot Hill's fact statements. Boot Hill did not controvert most of Lacost's additional facts.

The district court heard arguments of counsel on October 31, 2019. On January 21, 2020, the district court filed an order granting summary judgment to Boot Hill and the Contractor based on the winter storm doctrine. The district court adopted Boot Hill's statement of uncontroverted facts and made other findings based on the parties' stipulation of evidence. The district court's findings of fact are set forth below:

"1.    A strong winter storm affected much of central and southwest Kansas starting as early as Friday, January 13, 2017, at some locations, and ended early Monday, January 16, 2017.

"2.    Defendant Steve's Welding pretreated Defendant Boothill's premises with salt/ice melt on January 13, 2017, then repeated the treatment twice more, on January 15 and 16, 2017.

"3.    The greatest ice accretion occurred late Saturday evening on January 14, 2017 and continued into late afternoon on Sunday, January 15, 2017.

"4.    Damage caused by the storm to trees and subsequently, power lines, centered on Dodge City in Ford County, Kansas.

"5.    National Weather Service maps show that 1.0" to 1.5" of ice accumulated from the storm in the Dodge City area between January 14-16, 2017.

"6.    National Weather Service maps show a liquid water equivalent of 2-3" from the ice in the Dodge City area between January 14-16, 2017.

"7.    The National Weather Service's climatological data for Dodge City, Kansas shows that precipitation on January 14, 2017 was .44 inches. On January 15, 2017, the precipitation was 1.41 inches, and on January 16, 2017, it was another .51 inches.

"8.    The National Weather Service's climatological data for Dodge City, Kansas shows that on January 14, 2017, the low temperature was 25 degrees and the high temperature was 34 degrees.

"9.     The National Weather Service's climatological data for Dodge City, Kansas shows that on January 15, 2017, the low temperature was 30 degrees and the high temperature was 31 degrees.

"10.    The Natural Weather Service's climatological data for weather in Dodge City, Kansas shows that on January 16, 2017, the low temperature was 31 degrees and the high temperature was 33 degrees.

"11.    Plaintiffs' fall occurred in the early morning hours of Sunday, January 15, 2017, between 3:00 a.m. and 5:00 a.m.

"12.    On Sunday evening, January 15, 2017, KAKE News reported that heavy rains had frozen trees and power lines and damage from the storm was 'really bad'.

"13.    KWCH.com reported on Sunday, January 15, 2017 at 10:38 p.m., that Dodge City schools would be cancelled for Tuesday. The story was updated on Monday, January 16, 2017 to state that freezing rain would 'stick around for most of Kansas today.' The news article reported that as of Monday, January 16, 2017, thousands of people were still without power.

"14.    Plaintiff reported her fall to Defendant Boothill a week later, on January 21, 2017.

"15.    Plaintiff submitted numerous exhibits which contained photographic evidence comprised of still-frame photos taken from Defendant Boothill's security cameras. In these exhibits it shows that the Plaintiff's fall occurred when she stepped up on a curb to cross a median in the parking lot. Plaintiff refers to this median as 'an elevated section of the lot.'

"16.    The Court finds that these exhibits also clearly show that there is an unobstructed sidewalk, complete with marked cross-walks, running through the parking lot immediately adjacent to the curb and elevated median that Plaintiff stepped up on. In fact, the Plaintiff was stepping off of said sidewalk onto the elevated median at the time the fall occurred.

"17.    The Court further finds that the Plaintiff's exhibits '4a' through '4i' clearly show that the camera is partially obstructed by an icicle in several of the frames that were taken at the time the Plaintiff's fall was recorded, indicating that the conditions were icy and not merely wet as the Plaintiff argues."

Based on these facts, the district court made these conclusions of law:

"1.     A business proprietor must use ordinary care to keep those portions of the premises which can be expected to be used by a business invitee in a reasonably safe condition. However, a proprietor is not an absolute insurer of the safety of customers. *Agnew v. Dillons, Inc.*, 16 Kan. App. 2d 298, 300, 822 P.2d 1049 (1991).

"2.     A business proprietor, absent unusual circumstances, may await the end of a winter storm and a reasonable time thereafter to remove ice and snow from outdoor entrance walks, platforms, or steps because it is impractical to take action earlier. *Id* at 304.

"3.     A requirement that a business proprietor continually expend effort, during a winter storm, to remove frozen precipitation from outdoor surfaces would essentially be a requirement to insure the safety of invitees and is a burden beyond that of ordinary care. *Id* at 301.

"4      Based on the Kansas Winter Storm Doctrine, as established in *Agnew* and later adopted by the Kansas Supreme Court as sound public policy in *Jones v. Hansen*, 254 Kan. 499, 510-11, 867 P.2d 303 (1994), the Court has held that a business proprietor does not breach the duty of ordinary care by not removing accumulated precipitation from exterior surfaces during a winter storm and a reasonable time thereafter, absent unusual circumstances.

"5.     Kansas cases have further held that a pedestrian bears some responsibility for his or her own safety when going out in inclement weather. 'Every pedestrian who ventures out at such a time knows he or she is risking the chance of a fall and of a possible serious injury.' *Agnew* citing *Walker v. The Memorial Hospital*, 187 Va. 5, 45 S.E. 2d 898 (1948). This principle has also been upheld in later cases such as *Childs v. Goodland Economy Lodging, Inc.*, 277 P.3d 1193 (Kan. Ct. App. 2012, unpublished).

"6.     In the present case, Defendant Boothill took reasonable measures to pretreat its premises on January 13, 2017 prior to the storm moving into the area. Boothill then took additional reasonable measures to treat the premises with salt/ice melt after the storm had started January 15th then again on January 16, 2017.

"7.     The Plaintiff's fall occurred between 3:00 a.m. and 5:00 a.m. on January 15, 2017, while the storm was still in progress. Based upon the Kansas Winter Storm

5

Doctrine, Defendant Boothill had taken reasonable precautions to treat its premises under the weather conditions occurring at that time and did not breach the duty of ordinary care.

"8.      Plaintiff has failed to show that there were any unusual circumstances present at the time of the incident that would make the Kansas Winter Storm Doctrine inapplicable.

"9.      The Court finds that the Kansas Winter Storm Doctrine applies in this matter and acts to bar the Plaintiff's claims. Plaintiff's claims fail as a matter of law."

The district court found there was no remaining genuine issue of material fact and granted summary judgment for Boot Hill and the Contractor. Lacost timely appealed the district court's judgment.

On appeal, Lacost's brief first claims the district court's findings of fact were based on insufficient and improper evidence. Next, Lacost claims the district court improperly considered comparative fault, negligence, and sufficiency of performance of duty in reaching its summary judgment decision. We will reframe the issues slightly and first address whether the district court erred in relying on Boot Hill's statement of uncontroverted facts. Second, we will address whether the district court erred in granting summary judgment based on the uncontroverted evidence before the court.

### DID THE DISTRICT COURT ERR BY RELYING ON BOOT HILL'S STATEMENT OF UNCONTROVERTED FACTS?

Lacost challenges the district court's findings of fact in which the court essentially adopted Boot Hill's statement of uncontroverted facts in the summary judgment pleadings. Lacost argues that she satisfied Rule 141(b) by objecting to Boot Hill's evidence and that Boot Hill's weather evidence was not relevant. She argues that she controverted the statements by implication when she objected to them. Boot Hill argues that Lacost's objections did not satisfy Rule 141, so the district court properly adopted the facts in its findings for summary judgment. Whether Lacost complied with the

6

requirements of Rule 141 presents a question of law subject to unlimited review. See *Rhoten v. Dickson*, 290 Kan. 92, 99-100, 223 P.3d 786 (2010).

Kansas Supreme Court Rule 141 (2021 Kan. S. Ct. R. 220) facilitates the examination of whether there are genuine issues of material fact. *Frick v. City of Salina*, 290 Kan. 869, 878, 235 P.3d 1211 (2010). Rule 141(a) requires the moving party to concisely set forth, in separately numbered paragraphs, the uncontroverted fact contentions of the movant with precise references to pages, lines, and/or paragraphs of transcripts, depositions, interrogatories, admissions, affidavits, exhibits, or other supporting documents in the court file and otherwise included in the record.

Rule 141(b) requires any opposing party to reply to the moving party within 21 days setting forth "in separately numbered paragraphs that correspond to the numbered paragraphs of movant's memorandum or brief" a statement whether each factual contention of movant is controverted, and if controverted, a concise summary of "conflicting testimony or evidence and any additional genuine issues of material fact that preclude summary judgment." (2021 Kan. S. Ct. R. 221). Further, Rule 141(d) allows a party to object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

Kansas appellate courts have made it clear that "[r]ule 141 is not just fluff—it means what it says and serves a necessary purpose." *McCullough v. Bethany Med. Center*, 235 Kan. 732, 736, 683 P.2d 1258 (1984). "Refusal to follow these rules may often indicate a lack of substance in the parties' arguments that is attempted to be camouflaged through vagueness." *Business Opportunities Unlimited, Inc. v. Envirotech Heating & Cooling, Inc.*, 26 Kan. App. 2d 616, 618, 992 P.2d 1250 (1999). "A party ignores Rule 141 at its peril." 26 Kan. App. 2d at 618.

Rule 141(b) is not satisfied by merely stating that facts are controverted, it must be cited to the record. *State ex rel. Stephan v. Commemorative Services Corp.*, 16 Kan. App. 2d 389, 401, 823 P.2d 831 (1991). The nonmoving party must put forward evidence showing a material dispute of fact in opposition to a motion for summary judgment—it is not the district court's responsibility. *Willard v. City of Kansas City*, 235 Kan. 655, 657, 681 P.2d 1067 (1984). "A party whose lack of diligence frustrates the trial court's ability to determine whether factual issues are controverted falls squarely within the sanctions of Rule 141." *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 531, 739 P.2d 444 (1987).

Lacost objected to almost all of Boot Hill's statements of uncontroverted facts based on relevance and hearsay. On appeal, Lacost continues to argue that Boot Hill's weather evidence was irrelevant, but she no longer asserts a hearsay objection. An issue not briefed is considered waived and abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

The district court implicitly overruled Lacost's objections to Boot Hill's fact statements by adopting Boot Hill's facts as uncontroverted. Rule 141(d) allows a party to object on legal grounds to the exhibits supporting a statement of uncontroverted facts, but a nonmoving party must still comply with Rule 141(b) by controverting the statements and providing evidence showing a disputed fact. Lacost failed to state the facts were controverted and failed to concisely summarize the conflicting evidence with precise references to the record as required by Rule 141(b)(1)(C).

At the hearing, Lacost's attorney said, "I think it can well be implied that if a party responding to a summary judgment movant objects to an assertion of fact . . . that it's controverted." Lacost acknowledged that she did not cite the record or explain why or how the facts were controverted as required by Rule 141. Lacost's attorney stated, "Granted, the additional parts of, well, if you controvert something, you have to bring out your evidence and explain and cite to the record as to why you are controverting it. We

didn't do that in the—the parts that we objected to." In her reply brief, Lacost said it would not make sense to directly controvert the facts and so she did not do so.

Lacost had ample opportunity to comply with Rule 141. While she objected to the facts, she did not controvert them. Because she did not, Lacost was considered to have admitted the factual contentions set forth in Boot Hill's memorandum. Thus, the district court did not err by relying on Boot Hill's statement of uncontroverted facts.

### DID THE DISTRICT COURT ERR IN GRANTING SUMMARY JUDGMENT BASED ON THE UNCONTROVERTED EVIDENCE BEFORE THE COURT?

Lacost argues that the district court erred in granting summary judgment based on the winter storm doctrine. Lacost continues to argue that Boot Hill's weather evidence was not relevant, and she asserts that the only relevant evidence was the security camera photos of the parking lot at the time of her fall. Relying on Restatement (Second) of Torts § 323 (1965), Locost argues that she detrimentally relied on the fact that Boot Hill made some effort through the Contractor to keep the parking lot clear before she fell. Finally, Lacost argues that the district court improperly considered comparative fault, assumption of risk, and sufficiency of performance of duty in granting summary judgment.

Boot Hill argues that based on the undisputed facts about the weather conditions, the winter storm doctrine applied, and the defendants had no duty to remove ice accumulation from the premises during an ongoing storm and for a reasonable time after. Boot Hill also argues that Lacost did not preserve her detrimental reliance argument, but even if she had, it does not apply.

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the

9

evidence in favor of the party against whom the ruling [is] sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

Summary judgment should be granted with caution in negligence cases. See *Edwards v. Anderson Engineering, Inc.*, 284 Kan. 892, 904, 166 P.3d 1047 (2007). To prove a negligence claim, a plaintiff must establish the existence of a duty, a breach of that duty, an injury, and a causal connection between the duty breached and the injury suffered. Whether a duty exists is a question of law, and whether the duty has been breached is a question of fact. *Reynolds v. Kansas Dept. of Transp.*, 273 Kan. 261, Syl. ¶ 1, 43 P.3d 799 (2002). Summary judgment is proper in a negligence action if the only questions presented are questions of law. See *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 39, 169 P.3d 1052 (2007). Questions of law are reviewed de novo. *GFTLenexa, LLC*, 310 Kan. at 982.

Lacost brought a premises liability action against Boot Hill and the Contractor to recover for the injuries she sustained in her fall on the parking lot. In premises liability cases, an invitee is one who enters or remains on the premises of another at the express or implied invitation of the possessor of the premises for the benefit of the inviter, or for the mutual benefit and advantage of both inviter and invitee. *Jones v. Hansen*, 254 Kan. 499, 503, 867 P.2d 303 (1994). A licensee or social guest is one who enters or remains on the premises of another by virtue of either the express or implied consent of the possessor of the premises, or by operation of law. 254 Kan. at 503. A trespasser is one who enters on the premises of another without any right, lawful authority, or an express or implied invitation or license. 254 Kan. at 503.

In Kansas, the duty owed by an occupier of land to invitees and licensees alike is one of reasonable care under all the circumstances. 254 Kan. at 509. A possessor of the premises upon which a trespasser intrudes owes a trespasser a duty to refrain from willfully, wantonly, or recklessly injuring the trespasser. 254 Kan. at 510. Lacost was an invitee on the Boot Hill premises and as such, Boot Hill owed a duty of reasonable or ordinary care under all the circumstances.

The district court granted summary judgment for Boot Hill and the Contractor based on the "winter storm" doctrine enunciated in *Agnew v. Dillons, Inc.*, 16 Kan. App. 2d 298, Syl. ¶ 2, 822 P.2d 1049 (1991). In *Agnew*, an ice storm was in progress and ice was accumulating in front of a Dillons grocery store when plaintiff entered the store. Plaintiff was exiting Dillons when she slipped on a mat leading into the store. The trial court granted a directed verdict for Dillons on the issue of liability. In affirming that part of the district court's ruling, this court held: "A business proprietor, absent unusual circumstances, may await the end of a winter storm and a reasonable time thereafter to remove ice and snow from outdoor entrance walks, platforms, or steps because it is impractical to take action earlier." 16 Kan. App. 2d 298, Syl. ¶ 2.

The *Agnew* court reasoned that requiring a business proprietor to continually expend effort during a winter storm to remove precipitation from outdoor surfaces would essentially be a requirement to insure the safety of invitees and is a burden which is beyond that of ordinary care. 16 Kan. App. 2d at 304. Interestingly, the *Agnew* court remanded the case for a new trial because of the trial court's failure to allow evidence of a lack of a handrail at the Dillons' entrance. 16 Kan. App. 2d at 305-06.

The Kansas Supreme Court adopted the *Agnew* winter storm doctrine in *Hansen*, 254 Kan. 499, Syl. ¶ 5. The court ruled that *Agnew* is supported by sound public policy and applied the doctrine to invitees and licensees alike:

11

"We believe that the *Agnew* rationale and those cases cited in support of the *Agnew* rationale are supported by sound public policy. Because we have adopted a standard of reasonable care under all circumstances with respect to all persons who are on property with the occupier's consent, we believe that the *Agnew* case and reasoning therein applies with equal force and will help define the duty of 'reasonable care' in future premises liability cases involving licensees." 254 Kan. at 510-11.

This court more recently applied *Agnew* in *Childs v. Goodland Econ. Lodging, Inc.*, No. 106,583, 2012 WL 2149818, at *3 (Kan. App. 2012) (unpublished opinion). In *Childs*, the weather had stranded a truck driver at the motel when a winter storm shut down 1-70. The snow fell for 18 hours, stopping around 3 a.m., although most of the snowfall ended the night before around 7 p.m. Nearly 17 inches of snow accumulated, and winds blew up to 39 miles per hour. At 4 a.m., Childs left his second-floor room to check on his truck. The motel had no elevator, and a snowdrift blocked the covered interior stairway's door at the bottom of the stairs, so Childs proceeded down the partially covered exterior staircase. Childs took one step, fell, and landed at the bottom of the stairs, injuring himself. This court held that the motel had no duty to clear an exterior stairway between 3 a.m. and 4 a.m. during a winter storm or to warn its patrons that outdoor surfaces may be slick. 2012 WL 2149818, at *3.

The *Childs* court also discussed the Restatement (Second) of Torts § 323 (1965), which provides that a person is subject to liability if they begin to render services to another and their failure to exercise reasonable care causes the other person to suffer physical harm if that person relied on the first person's undertaking. See *Circle Land & Cattle Corp. v. Amoco Oil Co.,* 232 Kan. 482, 488, 657 P.2d 532 (1983); Restatement (Second) of Torts § 323 (1965). This court said that "[a]lthough [the Kansas Supreme Court has] adopted the Restatement (Second) of Torts § 323 (1965) . . . the motel's duty is still one of ordinary care under the circumstances." *Childs*, 2012 WL 2149818, at *4. As a result, this court found "that the *Agnew* rationale continues to be applicable under the circumstances presented in this case." 2012 WL 2149818, at *4.

12

This court declined to apply the winter storm doctrine in one reported case. In *Worley v. Bradford Pointe Apartments, Inc.*, 31 Kan. App. 2d 737, 743, 73 P.3d 149 (2003), this court held that the winter storm doctrine did not bar plaintiff's claim for injuries when he slipped and fell on ice at an apartment complex because ice removal services were included as a service to tenants as part of their rent. The landlord had voluntarily assumed the duty to provide fast and effective ice removal, which it used as a selling point for its apartments. The landlord admitted the cost of snow and ice removal was part of the tenants' rent, and it expected its maintenance crews to treat ice within one hour of receiving a tenant phone call. The landlord also distributed written materials assuring tenants that it would apply salt whenever needed to treat icy conditions. This court found that "resolving all facts and inferences in favor of [plaintiff], the trial court could not have granted [landlord's] motion for directed verdict." 31 Kan. App. 2d at 744.

Returning to our case, Lacost argues that the weather data Boot Hill introduced to support its summary judgment motion was not relevant because it covered the entire Dodge City area. Lacost asserts the only relevant evidence was the security camera photos of the parking lot at the time of her fall. But this argument reflects a misunderstanding of the winter storm doctrine which requires the existence of a duty. Boot Hill owed no duty to Lacost to keep the parking lot clear of snow and ice until a reasonable time after the storm ended because anything else would have been beyond ordinary care. Thus, Boot Hill's national weather data was relevant and the district court properly considered the evidence in ruling on the summary judgment motion.

Here, the uncontroverted facts show that there was an ongoing winter storm in Dodge City between January 13 and 16, 2017. The temperatures from the day before the incident to the day after were below freezing. There was precipitation the day before and on January 15, the day in question. Ice accumulated 1 to 1.5 inches between January 14 and 16. By nightfall on January 15, heavy rain had frozen to trees and power lines. The local news stations reported damage from the storm was "'really bad.'" Thousands of

13

people were without power and schools were closed. Based on these uncontroverted facts, the district court correctly found that Boot Hill and the Contractor owed no duty to Lacost to keep the ice clear at the time of her fall. Cf. *Agnew*, 16 Kan. App. 2d at 304.

Next, relying on Restatement (Second) of Torts § 323 (1965), Lacost argues that she detrimentally relied on the fact that Boot Hill made some effort through the Contractor to keep the parking lot clear before she fell. Lacost asserts this claim involved disputed facts that precluded the district court from granting summary judgment.

Restatement (Second) of Torts § 323 (1965) states:

"§ 323. Negligent Performance of Undertaking to Render Services

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of harm, or
(b) the harm is suffered because of the other's reliance upon the undertaking."

Boot Hill asserts that Lacost did not preserve this claim by making it in district court. Subject to some recognized exceptions, issues not raised before the district court cannot be raised on appeal. *Gannon v. State*, 303 Kan. 682, 733, 368 P.3d 1024 (2016). Boot Hill is correct that Lacost never cited Restatement (Second) of Torts § 323 in her response to the summary judgment motion, nor did she raise the issue at the hearing on the motion. In addition, Kansas Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 35) requires that each issue in an appellate brief must have a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on. If the issue was not raised below, there must be an explanation why the issue is properly before the court.

Our Supreme Court has warned that Rule 6.02(a)(5) will be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

Lacost has failed to comply with Rule 6.02(a)(5). She does not reference to the location in the record where her claim under Restatement (Second) of Torts § 323 was raised and ruled on in district court. Lacost's reply brief points to a few sentences in her response to the summary judgment motion where she argued that the defendants had "waived" the winter storm doctrine as a defense through their snow/ice remediation efforts before and during the storm. But this brief argument based on waiver differs from making a claim under Restatement (Second) of Torts § 323. Even after Boot Hill asserted that Lacost did not comply with Rule 6.02(a)(5), Lacost made no effort in her reply brief to argue that any exceptions allowed her to raise this claim for the first time on appeal. We agree with Boot Hill that Lacost has failed to preserve this issue for appeal.

Alternatively, we find that Lacost's claim under Restatement (Second) of Torts § 323 fails on the merits. Lacost argues that she detrimentally relied on the fact that Boot Hill made some effort through the Contractor to keep the parking lot clear, and this fact precludes summary judgment. But as this court stated in *Childs*, although Kansas has adopted Restatement (Second) of Torts § 323, this does not change the fact that a business proprietor's duty to an invitee is one of ordinary care under the circumstances. Absent unusual circumstances, Boot Hill and the Contractor owed no duty to Lacost to keep the parking lot clear of ice during a winter storm until the end of the winter storm and a reasonable time afterward because anything else would be beyond ordinary care. If Lacost's assertion is correct that Boot Hill and the Contractor could be liable simply because they tried to clear the parking lot during the winter storm, then no business would ever try to keep its premises clear during inclement weather.

As a final point, Lacost argues that the district court improperly considered factual questions: comparative negligence, assumption of risk, and reasonableness of

performance of duty in making its summary judgment decision. The district court found in its conclusions of law that:

> "5.    Kansas cases have further held that a pedestrian bears some responsibility for his or her own safety when going out in inclement weather. 'Every pedestrian who ventures out at such a time knows he or she is risking the chance of a fall and of a possible serious injury.' *Agnew* citing *Walker v. The Memorial Hospital*, 187 Va. 5, 45 S.E. 2d 898 (1948). This principle has also been upheld in later cases such as *Childs v. Goodland Economy Lodging, Inc*, 277 P.3d 1193 (Kan. Ct. App. 2012, unpublished).
>
> "6.    In the present case, [Boot Hill] took reasonable measures to pretreat its premises on January 13, 2017 prior to the storm moving into the area. [Boot Hill] then took additional reasonable measures to treat the premises with salt/ice melt after the storm had started January 15th then again on January 16, 2017."

Lacost argues that these conclusions must mean the court compared Lacost's implied assumption of risk and negligence versus the reasonable efforts of Boot Hill. She argues that this is a question of fact that should survive summary judgment because it involves a question of whether Boot Hill breached a duty.

We first observe the rationale for retaining the assumption of risk doctrine as a bar to recovery in a negligence claim is no longer viable in Kansas given the statutory comparative fault rules and subsequent caselaw. See *Simmons v. Porter*, 298 Kan. 299, Syl. ¶ 6, 312 P.3d 345 (2013). In any event, the district court's legal conclusions in paragraphs 5 and 6 were essentially restating the winter storm doctrine. The district court did not make a finding of negligence, comparative fault, or assumption of risk against Lacost. Instead, the district court merely cited to other cases in which the winter storm doctrine was at issue, e.g., *Agnew*, *Walker*, and *Childs*.

We find that the district court's legal conclusions in paragraphs 5 and 6 were not erroneous. But even if the district court erred by considering concepts of comparative fault in granting summary judgment, this error would not change the result of this case. Boot Hill and the Contractor were entitled to summary judgment because Lacost could not establish a duty. There can be no breach where there is no duty.

Based on the uncontroverted evidence, the district court did not err in granting summary judgment based on the winter storm doctrine. Reasonable minds could not differ in finding that at the time of Lacost's fall, a winter storm was in progress. Lacost failed to show the existence of any unusual circumstances to prevent the winter storm doctrine from being applied, such as the unusual circumstances that existed in *Worley*. Boot Hill and the Contractor owed no duty to Lacost to continually extend efforts to remove the accumulating ice from the parking lot during the winter storm.

Affirmed.